# Smith and Kausler *versus* Harry.

H., who was an executor, gave to his sureties a mortgage to indemnify them against "all loss, cost, damage and expense which they could or might be put to by reason of their being securities on his bond." H. filed his account, showing a balance of $2000 in his hands. The court approved the account and ordered the fund to be distributed. H. at this time was insolvent, and one of the sureties advanced the money to pay the legacies. These payments were made before suit brought or before any demand was made upon the sureties by the legatees. The court below held that said mortgage was not an indemnity against mere liability, but against loss, cost, damage and expense, and that the mortgagees could not voluntarily and without demand upon them, convert their liability into loss, but only after proceedings *in invitum.* *Held,* that this was error; that the decree of the court approving the account, fixed the liability of the sureties for an absolute debt, a sum certain, for which there was then a present right of action; and that they were not obliged to wait until after the legatees formally demanded the money, or issued process for its collection, before moving to protect themselves; that the plaintiffs' rights as sureties were not waived by taking an indemnity such as this mortgage, and that they were entitled to all the advantage of said security.

June 19th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas, of *Franklin county:* Of May Term 1879, No. 216.

Scire facias sur mortgage issued by George W. Smith and John H. Kausler against Jacob K. Harry.

On the 28th day of May 1872, Jacob K. Harry, as executor of the last will of George J. Harry, deceased, executed to the state of Maryland his bond in the sum of $20,000, with George W. Smith and John H. Kausler as sureties thereon, conditioned as follows : " The condition of the above obligation is such, that if the above bounden Jacob K. Harry shall well and truly perform the office of executor of George J. Harry, late of said county, deceased, according to law, and shall in all respects discharge the duties of him required by law as executor aforesaid, without any injury or damage to any person interested in the faithful performance of the

[Smith *v.* Harry.]

said office, then the above obligation shall be void; it shall otherwise be in full force and virtue in law."

On the same day Harry executed and delivered to his said sureties a deed of mortgage for a lot of ground in Franklin county, Pennsylvania, conditioned as follows: " Provided, that if the said Jacob K. Harry, do and shall well and truly save harmless and keep indemnified the said George W. Smith and John H. Kausler from any and all loss, cost, damage and expense which they could or might be put to by reason of their being my sureties on said bond, then this mortgage shall be void, otherwise to be and remain in full force and virtue in law."    This mortgage was duly recorded on the 12th of June 1872.

On the 8th of April 1873, William McCrory obtained a judgment by confession against Harry, the mortgagor, in the Common Pleas of Franklin county, for $1000.

On the 5th August 1873, Jacob K. Harry settled his sixteenth account as executor of George J. Harry, deceased, in the Orphans' Court of Washington county, Maryland, which contained a schedule of distribution to the legatees, and which showed a balance in his hands, thus distributed, of $2000.    This account was the same day approved and ordered to be recorded.

On the 14th April 1874 he filed his seventeenth account, showing a balance of $1006.18 in his hands, which was approved and the balance distributed by the court.

The legatees were eight in all.    The balance on the sixteenth account was paid by check of Kausler for $1750, dated 5th August 1873, and the executor's own legacy of $250.

The balance on the seventeenth account was paid by the executor's commissions and dividend, with $134.77, advanced by Kausler by check dated 3d August 1874.

These several advancements were made by Kausler after the confirmation of the respective accounts, on which they were paid, but not upon the request or demand of any of the parties in interest.    Harry, the executor, was insolvent; excepting the mortgaged premises he had no property or resources whatever but household furniture worth $300.    This fact was known to Kausler at the time, and the money was advanced by him because he believed that those entitled to the money would begin proceedings at law to compel payment by the sureties.

McCrory sued out writs of execution upon his judgment against Harry, and by virtue of these sold the mortgaged premises at sheriff's sale, himself becoming the purchaser for the sum of $50. The sheriff's deed was acknowledged 11th December 1876.

Kausler sued out a scire facias upon his mortgage 20th January 1877. It was on this latter proceeding that this case arose. McCrory having been allowed to intervene made defence to the action on several grounds.

[Smith *v.* Harry.]

The court below, to whom the case was submitted without a jury, ruled the case against the plaintiffs, in an opinion, inter alia, saying:

" I think a correct statement of the law on the facts found to be this: the bond was a contingent liability, but notwithstanding there was no suit to fix the executor with a *devastavit* and it was not judicially ascertained that the assets were no longer to be reached by an execution (Commonwealth *v.* Evans, 1 Watts 439), yet when the Orphans' Court, on the 5th of August 1873, approved the sixteenth account which distributed the sum of $2000 to the legatees, awarding a definite sum to each of them, thereby fixing the amount of the executor's personal responsibility, that was all that was necessary as a pre-requisite to a suit on the bond. For such is our law, and since it does not appear in evidence what the law of Maryland is, I am to assume that it is the same as our own. See Commonwealth *v.* Stub, 1 Jones 157; Commonwealth *v.* Wenrick, 8 Watts 161. A judgment or decree against the principal will authorize an action against the surety on the bond; nothing more is needed. And where the right of the legatee to demand payment from the executer is determined by due course of law, then it becomes an *absolute* debt, for which the surety is *liable* on his bond. Furthermore, here the executor resided in Pennsylvania, and suit would lie on the bond against the surety without previous recourse to the principal: Commonwealth *v.* Wenwick, *supra.* Smith and Kausler, the sureties on Harry's bond, were therefore liable to suit on the bond, at the instance of the legatees, for the sums due them on this distribution, immediately on the passing of the sixteenth account. And the observations are correct with regard to the seventeenth account.

" The payments by Kausler therefore were not voluntary in the sense that they were made before the debt became an absolute one, and before the sureties became liable to suit on the bond. They were voluntary payments only in the sense that they were made before any demand by those entitled, and not upon any suit or proceeding *in invitum.*

" But the question still remains whether a payment voluntary in this latter sense is protected by the mortgage. For the mortgage is an instrument of mere indemnity to save the sureties harmless, not from *liability* on account of their suretyship, but from ' any and all loss, cost, damage and expense' by reason thereof. Now although, as I have shown, the sureties were *liable* at the time of the payment by Kausler, to be called on and compelled to pay, yet it did not appear with legal certainty that they would be called on, in the absence of any demand by those entitled to compel payment; for *non constat* that such demand would ever be made, and if not there would be no loss or damage. As against William McCrory a subsequent judgment-creditor, the mortgagees could not voluntarily create a breach of the condition in the mortgage by turning that

which was only a *liability* into an actual loss, of their own head without any motion on the part of those entitled to demand payment. In Crippen *v.* Thompson, 6 Barb. 532 (cited U. S. Digest, 108, 111, 2042), it was held ' that in order to recover upon a bond of mere indemnity to save the obligee harmless from another bond executed by him, the obligee must show damage and that involuntarily sustained : the damage must have been suffered or paid by compulsion, by some proceedings *in .invitum* against him.' See also U. S. Digest, 24, 111, 411, 414, 420.''

The court therefore found as a conclusion of law, that said mortgage was not an indemnity against mere liability, but against loss, cost, damage and expense, and that the mortgagees could not voluntarily and without demand upon them, convert their liability into loss, but only after proceedings *in invitum.*    •

This ruling was assigned for error.

*William McLellan* and *John Stewart,* for plaintiffs in error.— The settlement of his account and its confirmation by the court, fixed the executor's liability, and non-payment thereafter was a breach of · his bond : Commonwealth *v.* Moltz, 10 Barr 530.

It determined also the liability of the sureties ; it was thereafter to be measured by the liability of the principal ; it was thereafter not contingent, but absolute : Patterson's Appeal, 12 Wright 342 ; Boehmer *v.* Schuylkill Co., 10 Id. 452 ; Stovall *v.* Banks, 10 Wallace 583. ·

The breach of the bond occurs whenever the claim becomes a lawful one, capable of being enforced, and the surety is put in jeopardy. The latter is not bound to wait until an action is brought against him before proceeding for indemnity.

Although, says Lord Keeper North, the surety is not troubled or molested for the debt, yet, at any time after the money becomes payable on the original bond, this court will decree the principal to discharge the debt, it being unreasonable that a man shall always have such a cloud hang over him : Renelaugh *v.* Hayes, 1 Vern. 188.

In the absence of any express authority we cannot agree that the law regards such an indemnity as this available only after actual loss. There is no warrant for thus limiting its character. The following cases are irreconcilable with such rule : McCann *v.* Farley, 2 Casey 173 ; Huzzard *v.* Nagle, 4 Wright 181 ; Bamford *v.* Keefer, 18 P. F. Smith 390. The settlement of an administration account, confirmed by the court, is tantamount to a final judgment obtained as against the administrator : Commonwealth *v.* Moltz, *supra ;* Commonwealth *v.* Evans, 1 Watts 439 ; Commonwealth *v.* Wenrick, 8 Id. 159.

If obtaining a judgment against a surety be held such a damage as works a breach of the contract of indemnity against damage,

[Smith *v*. Harry.]

why shall not the settlement of the account in the present case be so held. See Bamford *v*. Keefer, *supra;* Stroh *v*. Kimmell, 8 Watts 157; Leber *v*. Kauffelt, 5 W. & S. 442; Constant *v*. Matteson, 22 Ill. 546.

*W. U. Brewer* and *J. McD. Sharpe*, for defendant in error.—The liability of Smith and Kausler, as sureties in the bond of Harry, was originally contingent. No liability attached to them until the personal responsibility of their principal for the debt was first established, either in an action at law, or by a decree of the Orphans' Court, fixing the amount of money in his hands and making distribution: Commonwealth *v*. Evans, 1 Watts 437; Commonwealth *v*. Wenrick, 8 Id. 159; Myers *v*. Fretz, 4 Barr 346; Commonwealth *v*. Stub, 1 Jones 151.

The cases cited by plaintiff in error do not support his contention, and are plainly distinguishable from this case. When Kausler advanced the money to Harry, no demand had been made either upon him or upon his principal, for any part of the money, by any of the legatees. No judgment had been recovered against the sureties. No suit was brought, or even threatened. It was a purely voluntary and unsolicited payment by Kausler. Even the principal did not request him to pay the money. We submit, therefore, that the court ruled correctly, when they held that the payment by Kausler was purely voluntary; that he could not, as against William McCrory, create a breach of the condition of indemnity in the mortgage, by turning that which was only a *liability* into an actual loss, at his own volition, without any motion on the part of those entitled to payment: Crippen *v*. Thompson, 6 Barb. 534; 3 Pars. on Cont. 186; Weller *v*. Eames, 15 Minn. 461; Churchill *v*. Hunt, 3 Denio 32; Beaver *v*. Beaver, 11 Harris 169.

Mr. Justice TRUNKEY delivered the opinion of the court, October 6th 1879.

The defendant concedes that the decree of the Orphans' Court, approving the executor's account and making distribution, was all that was necessary as prerequisite to a suit on the bond. That decree established the executor's personal responsibility and it was his duty to make immediate payment. It fixed the liability of his sureties for an absolute debt, a sum certain, for which there was then a present right of action against them; and they were not obliged to wait till after the legatees formally demanded the money, or issued process for its collection, before moving to protect themselves. "Harry had no means wherewith to pay the said distribution," and neither reason nor law required them to suffer the debt to become swollen by interest and costs, before they paid it, on pain of being treated as mere volunteers. Their liability had arisen because of the principal debtor's default, and the law implies that

[Smith *v.* Harry.]

he requested them to pay the money. Where a surety pays an overdue debt, he can recover what he pays from the principal debtor, who will be considered as having requested him to pay the debt in receiving him as his surety: 1 Par. Con. 393.

In equity, as soon as the surety pays the debt, he is considered as subrogated to all the remedies of the creditor against the person and estate of the principal. In some cases, without payment, a surety, apprehending danger from the delay of the creditor, may compel him to sue the principal debtor on giving an indemnity against the consequences of risk and expense. A surety may file a bill in equity against the principal to compel him to pay the debt at maturity, and make the creditor a party in order that he be at hand to receive the money. In an early case it was said: " Although the surety is not troubled or molested for the debt, yet at any time after the money becomes payable, the court will decree the principal to discharge it, it being unreasonable that a man should always have such a cloud hanging over him :" Renelaugh *v.* Hays, 1 Vern. 188; 1 Story's Eq., sect. 327; 1 L. C. Eq. 144; 3 Id. 557; Hays *v.* Ward, 4 Johns. Ch. 123; Beaver *v.* Beaver, 11 Harris 169.

When the executor made default in payment to the legatees, according to the decree of the Orphans' Court, well settled principles authorized his sureties at once to commence proceedings to compel him to pay the debt, or themselves could pay it, as they did, and recover the money from him. The mortgage contains no express or implied contract depriving the mortgagees, as sureties, of any remedies against the mortgagor, as principal. Both on its face and in its circumstances it was a security to the sureties against "all loss, cost, damage and expense which they could or might be put to by reason of their being sureties on said bond." Upon the executor's default in complying with the said decree, they could have been put to damage and expense; they were legally bound to pay the debt, and had a right to discharge it and avail themselves of the security. The mortgagor has no color of defence. Was not that recorded mortgage notice to a subsequent purchaser or creditor ? He could see that the land was pledged to save harmless the sureties on an executor's bond fully recited in the mortgage. He is presumed to have known the extent of their liability, and that, upon the executor's default, it would become the sureties' duty to pay the money according to the adjudication of the Orphans' Court. The facts show no superior equity in favor of a subsequent creditor.

This case differs widely from Crippen *v.* Thompson and Bishop, 6 Barb. 532, cited by the court below. There the action was on a bond, given to Crippen by Thompson as principal and Bishop as surety, conditioned that Thompson should " save harmless the said" Crippen " from a bond executed by him to Nathan R. Crippen, deceased, dated on or about the 3d day of March 1840, the said Crippen giving the said Thompson notice of any proceedings at law

or otherwise thereon." That bond was to pay the debts of Crippen, Sr., the plaintiff's father. After it was given and before the defendants gave their bond, the plaintiff agreed with Dayton to pay him a debt owing by the father, making himself directly liable for it and thereby precluding all examination and defence as to that debt. The court, in the opinion, said: " The question in this case, as we shall see, is whether the plaintiff can pay the debt of his father, voluntarily and without notice, and then recover upon the bond, against him and his surety?" It was held he could not. Here the mortgagor was the principal debtor, had his day in court, with opportunity to test the legality of the claim ; and after final decree and his default, his sureties, the mortgagees, actually paid the debt, before commencing proceedings on the mortgage. The doctrine in Crippen *v.* Thompson, if sound, does not apply.

The plaintiffs had rights as sureties which were not waived by taking an indemnity against "loss, cost, damage and expense," and having suffered loss, by reason of their suretyship, are entitled to advantage of their security.

Judgment reversed and a new trial ordered.