## SOUTHWESTERN SURETY INS. CO. v. WELLS et al.

(District Court, E. D. Pennsylvania. October 13, 1914.)

No. 1305.

**1. PRINCIPAL AND SURETY (§ 179*)—EXONERATION.**

Where a surety's obligation to pay has become absolute, the principal may be required to pay in relief of the surety by an application of the doctrine of exoneration in equity.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 512–519; Dec. Dig. § 179.*]

**2. GARNISHMENT (§ 17*)—PUBLIC MONEYS—EXECUTION PROCESS.**

Public moneys are not subject to levy under attachment in execution process, under the rule of public policy that municipalities, because of their governmental character, are not to be drawn into disputes only affecting other parties.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 32–34, 44; Dec. Dig. § 17.*]

**3. PRINCIPAL AND SURETY (§ 179*)—RIGHTS OF SURETY BEFORE PAYMENT—EXONERATION—INJUNCTION.**

Where complainant was surety for a municipal contractor on two bonds, one to complete the work, and the other to pay materialmen and employés, and complainant's obligation on the latter bond had become absolute, though not so on the bond to complete the work, the contractor having become insolvent and having borrowed money from other parties, to whom it had assigned money payable under the contract by the city, complainant was entitled to maintain a suit in equity for exoneration, and to have a receiver appointed to apply the moneys due from the city in accordance with the equities of the parties.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 512–519; Dec. Dig. § 179.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. PRINCIPAL AND SURETY (§ 179\*)—EXONERATION OF SURETY—MUNICIPAL CORPORATION—STAKEHOLDER.**

Where a contractor had agreed to do certain work for a city and to be paid as the work progressed, the city to retain a specified percentage pending completion of the contract, the city, in the absence of any claim of present indebtedness, was a mere stakeholder as to the amount that would be due to the contractor on completion of the work, and hence was not subject to suit by the contractor's surety in connection with other claimants to marshal the fund and have the same distributed according to the equities of the parties in exoneration of its liability.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 512–519; Dec. Dig. § 179.\*]

**5. COURTS (§ 347\*)—FEDERAL COURTS—PROCEDURE—PLEADING—DEMURRERS —MOTION.**

Demurrers in equity having been abolished, .complainant's right to an injunction under the case made by its bill on application for preliminary injunction can be raised only on a motion called up and disposed of in the discretion of the court, or after having been set down for hearing on five days' notice, as provided by equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi).

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 921; Dec. Dig. § 347.\*]

In Equity. Suit by the Southwestern Surety Insurance Company against Mark P. Wells and others. On application for preliminary injunction. Granted.

Samuel D. Matlack and Albert L. Moise, both of Philadelphia, Pa., for plaintiff.

E. W. Lank, Asst. City Sol., Michael J. Ryan, City Sol., Charles E. Bartlett, and V. Gilpin Robinson, all of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. The plaintiff and the city of Philadelphia, one of the defendants, respectively invoke and stand upon these two propositions. One is based upon the equitable doctrine of exoneration. The other is founded in a principle of governmental policy.

[1] The doctrine is that when the obligation of a surety to pay has become absolute the principal may be required to pay in relief of the surety. The basis of this is obvious. If the surety paid, his right, legal and equitable, to be reimbursed, is clear. Equity abhors mere formalities and works of supererogation, as nature abhors a vacuum. To require the surety to pay, in order that the principal might be required to pay, is a circumlocution and superfluous. The direct road to the same objective is to require the principal to pay. This is common sense, right, and equity. The limitations of the doctrine must not, however, be overlooked. The obligation of the surety to pay must have become absolute. To hold that because a surety may become involved he has an equity to be relieved would be to confer upon him the power to annul his own contract of suretyship. This equitable doctrine of exoneration is analogous to, or at least is often coupled with, the legal principle which permits the obligee in an indemnity bond to maintain his action as soon as a claim is made. He need not await the bringing of

an action against him. He may stand on the default in the condition to save him from the harassments of "claims and demands." It follows that an indemnifier may in a proper case invoke equitable relief. This is the accepted doctrine, as the following cases will suffice to show: Beaver v. Beaver, 23 Pa. 169; Ardesco Oil Co. v. Oil Co., 66 Pa. 381; Miller v. Bomberger, 76 Pa. 81; Smith v. Harry, 91 Pa. 124; Craighead v. Swartz, 219 Pa. 149, 67 Atl. 1003; Goodrich & Hick's Appeal, 109 Pa. 529, 2 Atl. 209; McAbee v. Cribbs, 194 Pa. 94, 44 Atl. 1066.

The principle of policy referred to is that municipalities, because of their governmental character, should not be drawn into disputes affecting only other parties. Following this policy government buildings, or other public property, are held not to be subject to the right of lien given, although in general terms, to materialmen and others. Wilson v. Huntingdon Co., 7 Watts & S. (Pa.) 197.

[2] Public moneys are not subject to levy under attachment in execution process. Erie v. Knapp, 29 Pa. 173. The principle has been extended, in Pennsylvania, at least, to proceedings in equity. It is not the principle of equity following the law, but a principle of policy. Granite Co. v. Douglass, 3 Pa. Dist. R. 133.

There is no reason in sight for not extending the full protection to afford which the policy has been adopted. There would be little in a policy which saved actions at law, but permitted proceedings in equity. It is founded upon the regard of the law for the persons of such litigants. It is a reflex of the sanctity of the sovereign. The limitations of this principle of policy must likewise be observed. The controversy must wholly concern third parties, and must not be in conflict with other policies of the law or equitable principles. If a right, legal or equitable, belongs to a litigant, he may enforce it against a municipal corporation, as well as against any one else. It is only when the municipality is clear of all obligations, and no other policy of the law intervenes, that it goes scathless. It is upon this limitation of the principle that all the well-considered cases arising in jurisdictions which give recognition to the policy may be reconciled.

It only remains to consider whether the plaintiff and the city of Philadelphia are respectively within these principles. This case was argued on what is in effect a demurrer under the former practice. The plaintiff has moved for a preliminary injunction, and at the hearing the city of Philadelphia, one of the defendants, asked to have the bill dismissed as to the city. In this the other defendants have joined. It was stipulated that the motion for a preliminary injunction should be considered by the court as if the plaintiff had introduced testimony and evidence in support of every averment of the bill and the defendants in support of their counter affidavits. The suggestion was made that the case might be further heard as if the defendants had moved to dismiss the bill after five days' notice under the rules; each side further stipulating to stand or fall according to the equities as disclosed by the bill.

The strength of the appeal made by the plaintiff to the court consists in this: The defendant Wells entered into a contract with the city of Philadelphia, containing the usual provision for payments as the work progressed, a certain percentage to be held until completion. He further entered into bonds, with surety, one for the completion of the

contract, and the other for the payment to materialmen and employés for material furnished and work done under the contract. The plaintiff became his surety. There is a time limit in the contract, with a per diem penalty of $50. The time of completion has expired, and the work is still unfinished. There is still in the hands of the city, not only the reserved final payment, but also other payments, which have been withheld thus far because the work done had not been accepted by the city.

The Wells Construction Company, another of the defendants, is a subcontractor on the work. This company is a Delaware corporation, unregistered in Pennsylvania. The contract with the city provides that it shall not be assignable. The plaintiff received the usual indemnifying agreement of the contractor, backed with collateral, and an assignment of moneys which would become due under the contract. Clark, another defendant, advanced moneys to the contractor for work done for the city, and the funds to become due by the city were also assigned to him.

[3] The averments of the plaintiff are that the contractor is insolvent, that the city is proposing when the moneys become due to pay over to him moneys remaining unpaid on the contract, and that these moneys are to be paid by the contractor over to Clark to reimburse him for his advances, whereby the bills for labor and material will remain unpaid and the plaintiff, as surety for the contractor, will be compelled to pay them. It, therefore, prays that all the parties concerned be enjoined from receiving any moneys from the city, to the end that all such moneys may remain in the hands of the city, to be applied to the payment for the work done and materials supplied toward the completion of the contract, and that a receiver may be appointed to receive the moneys in order to assure this application. It is asked that the city be included in this restraining order.

The plaintiff advances the proposition that it would be an inequitable thing to permit the moneys which come out of this contract to be diverted from the payment of debts incurred in the completion of the contract and to force the payment upon the plaintiff. The defendants, other than the city, set up that, Clark having advanced his money toward the completion of this contract and therefore in relief of the plaintiff, his equities are higher than those of the plaintiff, and it is equitable and proper that he should be reimbursed. The city takes the position that such an order would be tantamount to an attachment of the funds in its hands, and invokes the principle already discussed that it is the policy of the law not to subject municipalities or bodies exercising governmental functions to the entanglements of being mixed in the contentions of third parties.

The first inquiry is whether, under the facts of this case, the plaintiff is within the protection of the principle of exoneration invoked. The inquiry has a twofold aspect. The plaintiff is surety on the bond of the contractor for completion. The obligation of the surety upon that bond has not become absolute as yet. The plaintiff is therefore outside of the limits of the protecting influence of the principle, so far as respects its obligations under this bond. The plaintiff, however, is also surety on the bond to secure payment to materialmen and work-

men money which is now due them. The obligation of the surety on this bond has become absolute, and this fact brings the plaintiff to this extent within the protection of the principle. This disposes of the first question, and entitles plaintiff to the relief hereinafter awarded.

[4] The next inquiry is whether the controversy wholly concerns parties other than the city of Philadelphia, or whether the city itself is so involved, or there is any occasion to withhold from the city the protection of the principle of policy which has been invoked. There is no obligation of the city averred. It is not alleged that the city owes anything as yet. The case as it stands upon the averments of the bill makes it a stakeholder pure and simple. No equity as against it is suggested, and no principle or policy of the law countervailing that which has been invoked for its protection has been made to appear. To the city, therefore, belongs the right to be relieved of all part in the contentions between the other parties to this bill.

To the extent indicated the equities of the plaintiff carry the right to a preliminary injunction. A writ for this purpose may go out upon bond being given, but it is to exclude the city of Philadelphia from its operation, and require the other defendants to apply so much of the moneys received to the payment of the claims presently due and payable to materialmen and others for which the plaintiff is liable as surety by paying the moneys received under the contract to a receiver to be appointed. A decree to this effect, with bond, may be submitted for approval.

The earnestness and ability with which counsel have urged propositions upon the court with which the above is not in accord justify the extending of this opinion, so as to cover a general discussion of the cases to which we have been referred as supporting the propositions so advanced. The discussion of the cases cited on behalf of the plaintiff other than those already mentioned may be confined to the general observation that there is no well-considered case which extends the equitable doctrine of exoneration beyond the limitation stated. The authorities referred to upon the subject of exemption of municipalities from attachment process, or its equivalent, so far as apparently inconsistent with the views above expressed, may be classified as of three kinds. The one consists of cases which have been ruled in jurisdictions which do not give recognition to this rule of policy. Another consists of cases in which the municipality was in some way, or to some extent, itself concerned in the litigation, so that an obligation rested upon it which it was the right of the plaintiff in the bill to have enforced. If, for illustration, a municipality was under an obligation to pay, which obligation could be enforced by an action, then equity might enforce this obligation for the benefit of the surety. The other class consists in a line of cases in which some other principle or policy of the law is involved, which so far as is necessary overrides the policy of the law upon which the principle of exemption is based. An illustration of this is afforded by the line of cases in which it is proposed to take the moneys owned by the municipality from without the jurisdiction of the court and away from creditors who are citizens of the same state with the municipality, and transfer the fund to another jurisdiction for the benefit of foreign creditors. Here a plaintiff by a bill in equity may

invoke another policy of the law, which has been adopted for his protection under such circumstances.

The difficulties in the way of giving accord to the propositions advanced by the defendants other than the city of Philadelphia are twofold: First, the policy of the law which accords freedom to a municipality from being drawn into litigation with which it is not concerned is extended to the municipality alone and is not to be applied in relief of other litigants. The case of McElroy v. Hathaway et al., 44 Mich. 399, 6 N. W. 867, is not authority for the proposition in its entirety as advanced in reliance upon that case. The case is really only authority for the well-known principle that a court of equity will not usurp the powers and authority of a probate court by itself taking over the assets of a decedent's estate and administering them. This was what the court was asked, and refused, to do in that case. So far as the observations made by the judges who delivered opinions in that case bear upon the principle now under discussion, they recognize at least the possibility that "a court of equity proceeding in accordance with its own maxims and keeping within the limits given to it in this state" may grant relief to a surety by the application of the principle of exoneration. They also give recognition to the limitation of the principle, to which we have already adverted, that it did not place the power in the hands of a surety to relieve himself of his contract of suretyship merely because he had become apprehensive that he might suffer a loss by reason of it. There is an expression in the part of the opinion quoted which may mean that a court of equity under the laws of the state of Michigan, as in Pennsylvania, is not a court of general chancery jurisdiction, but is a court possessing only the limited powers which have been conferred upon it by the statute.

[5] It remains only to bring the future disposition of this case within the technical rules of pleading. Strictly speaking, all we have before us is the motion for a preliminary injunction, which we have already disposed of. As demurrers in equity have been abolished, the real question intended to be raised by the defendants can be raised only under rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi). This must be either on motion called up and disposed of in the discretion of the court, or on motion set down for hearing upon five days' notice. If counsel representing all the parties are in accord upon the suggestion that the case be finally disposed of as if upon demurrer, they may by stipulation, or by conforming strictly with the requirements of rule 29, put the case in formal shape to be finally ruled.

For the present, we confine ourselves to the awarding of a writ of preliminary injunction to the extent already indicated, and leave the equities of the parties to be determined after final hearing.