## Great American Insurance Co. v. Geris

*R. James Reynolds,* for plaintiff.
*Elly M. Heller* and *George Shorall,* for defendants.

SILVESTRI, *J.,* July 21, 1987 — Plaintiff, Great American Insurance Company, filed a complaint in equity against Anthony and Kathryn Geris, husband and wife, Forest Builders Inc. and AGI Inc., seeking payment of approximately $85,000. The complaint is in four counts designated as follows: count I, "Specific performance under the indemnity agreement," count II, "Exoneration," count III, "Indemnification," count IV, "Quia timet." Defendant, Forest Builders Inc., filed preliminary objections in the nature of a demurrer and a motion for more specific pleading; defendants Anthony and Kathryn Geris, and AGI Inc. thereafter filed identical preliminary objections. On May 12, 1987, after argument, this court entered an order granting the demurrer by reason of an adequate remedy at law; however, since plaintiff suffered no loss or damages, the case was dismissed without prejudice to file an action at law at such time as the case is ripe for disposition.

212

Plaintiff filed an appeal to the Superior Court; this opinion is being submitted pursuant to Pa.R.A.P. 1925(a).

It is well established that a court, when ruling on preliminary objections in the nature of a demurrer, must consider as true all well pleaded facts set forth in the complaint as well as the reasonable inferences which can be drawn therefrom. *Buchanan v. Brentwood Federal Savings and Loan Assoc.*, 416 Pa. 97, 204 A.2d 451 (1964), and may only sustain preliminary objections in the nature of a demurrer in those cases which are clear and free from doubt. *DeSantis v. Swigart*, 296 Pa. Super. 283, 442 A.2d 770 (1982). Considering the above standard, the complaint sets forth the following facts.

Plaintiff is an Ohio corporation, licensed to do business in Pennsylvania, which is engaged in the business of insurance, including the issuance of surety performance bonds. On July 21, 1980, defendants Forest Builders and AGI executed an "application for performance and payment bonds and indemnity agreement"; on the same date AGI (as contractor) and the Geris and Forest Builders (as the indemnitors) executed an "agreement of indemnity" with plaintiff (as surety). The indemnity agreement provides, in the paragraph entitled "Indemnity," as follows:

"*Second.* The contractor and indemnitors shall exonerate, indemnify, and keep indemnified the surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the surety may sustain and incur (1) By reason of having executed or procured the execution of the bonds, (2) By reason of the failure of the contractor or indemnitors

to perform or comply with the convenants and conditions of the agreement or (3) In enforcing any of the covenants and conditions of this agreement. Payment by reason of the aforesaid causes shall be made to the surety by the contractor and indemnitors as soon as liability exists or is asserted against the surety, whether or not the surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by the surety. In the event of any payment by the surety the contractor and indemnitors further agree that in any accounting between surety and the contractor, or between the surety and the indemnitors, or either or both of them, the surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this agreement under the belief that it is or was liable for the sums and amounts, so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the surety shall be prima facie evidence of the fact and amount of the liability to the surety."

The application provides, in part, that:

"*Second:* Subject to the limitations hereinafter named, the undersigned, by these presents do hereby jointly, severally and unconditionally agree to indemnify and reimburse the sureties and each of them from and against any and all loss, costs, damages, expenses and attorneys' fees, and any and all liability arising, resulting, sustained or incurred, or which can or may arise, result from or be sustained or incurred by said sureties, or any of them by reason of having executed said bonds, or any bond or bonds required by said applicants and given by said sureties, or any of them, in connection

214

with the performance of said contract, or in making any investigation or investigations on account of any obligations incurred under said bonds, or any of them, or any claim made or threatened in connection therewith, or in prosecuting or defending any action brought in connection therewith, or in obtaining any and all releases, or in enforcing any of the agreements herein contained with reference to said bonds.

"Anything to the contrary in this instrument notwithstanding, the liability of each of the applicants and indemnitors to the sureties shall be limited to the amount of money set opposite their respective names as follows:

*"Indemnitor          Amount of Obligation Assumed"*

"A.G.I. Inc.                          $1,049,424
"Forest Builders Inc.            $1,049,424"

AGI and Forest Builders sought application for a performance bond in the amount of $524,712 in relation to a contract between AGI and the Commonwealth of Pennsylvania for certain highway and bridge work to be done in Cambria County. Plaintiff issued the performance bond on July 21, 1980, in the amount of $524,712. On or about May 8, 1986, the Commonwealth of Pennsylvania, Department of Transportation commenced a civil action in Commonwealth Court (at 1359 C.D. 1986) against plaintiff seeking damages in the amount of $170,205, plus interest and costs. The commonwealth claims that plaintiff caused such damage by refusing to perform its obligations under the performance bond, which obligations arose as a result of the alleged breach by AGI of the contract for bridge and highway work between AGI and the commonwealth.

Plaintiff has set a reserve of $85,000 in the matter and has demanded orally and in writing that defendants make payment to it "in an amount which would exonerate and indemnify Great American against losses and expenses on the performance bond." Defendants have refused to do so.

As we have noted, plaintiff's complaint is in four counts: specific performance, indemnification, exoneration and quia timet. We address first the demurrer[1] to the counts in quia timet and exoneration, since the two counts are similar and find their genesis in the surety-principal relationship of the parties as opposed to the contractural agreements executed by those parties.

In opposition to the demurrer, plaintiff has cited several cases in support of its position that the equitable remedies of a quia timet and exoneration are available to it, and that this court, sitting as a court of equity, has the power to compel the payment of money damages by these defendants. Plaintiff's cases are of interest; however, as will be seen, they do not address the issue presented herein. Namely, is a court of equity empowered to grant a bill quia timet or order exoneration on behalf of a surety where the surety has been sued, but not adjudicated liable for the underlying claim? We hold that these equitable remedies are unavailable in such circumstances. In order to reach this conclusion, it is necessary to examine the nature of a bill quia timet and the remedy of exoneration.

Equity practice in Pennsylvania recognizes the remedy of a bill quia timet. Brewster's Pennsylvania

1. Defendants have asserted only that plaintiff has suffered no loss and that plaintiff has an adequate remedy at law, and have demurred on this basis to all four counts of the complaint.

Practice,[2] addresses the nature of the bill and the power of the court to grant it:

"The title of the bill (because he fears) explains its meaning.

. . .

"§5850. Use of the Bill Quia Timet —

"It is filed when a person is entitled to personal property after another's death and the plaintiff has reason to fear that the property will be destroyed by the present holder, or when the plaintiff is apprehensive of some future possible inconvenience from the negligence or wrong of another. . . .

"§5851. Nature of the Remedy —

"[T]he court can quiet the plaintiff's fear by removing the causes which provoke it. In certain cases relief may be given by the appointment of a receiver or by order to pay the fund into court . . .

. . .

"§5853. When the Bill will Lie —

"The bill will lie wherever a cloud exists upon the plaintiff's title by reason of trust set up, or fraud, spoliation or wrong done to a minor, and inability to sue at law. . . . "

Brewster does point out, however, that, like a court of law, a court of equity will not interpose merely in order to declare future rights.[3] He defines the various forms of injunctive relief available from a court of equity:

"§5854. Definitions of the Different Kinds of Injunctions —

---

2. A Treatise on Equity Practice In Pennsylvania, F. Carroll Brewster, (1895) Vol. II, Chapter XXI, Bills Quia Timet.

3. Brewster, *supra,* section 5853, "Future Rights will not be Protected by a Bill Quia Timet."

"The mandatory, corrects past injuries and re-stores right.

"The prohibitory, prevents present or imminent injuries and preserves rights.

"The bill quia timet, guards against future and contingent injuries, and 'insures rights.'"

We find, in Story's Equity Jurisprudence (14th ed.), additional reference to bills quia timet. That treatise states, in section 1142:

"[B]ills in equity quia timet . . . are in the nature of writs of prevention to accomplish the ends of precautionary justice. They are ordinarily applied to prevent wrongs or anticipated mischiefs, and not merely to redress them when done. The party seeks the aid of a Court of Equity because he fears (quia timet) some future probable injury to his rights or interests, and not because an injury has already occurred which requires any compensation or other relief."

Bills quia timet have been granted most often when a party seeks cancellation of a deed or other instrument which, if recorded, would cast a cloud upon that party's title to property. See *Eckman v. Eckman,* 55 Pa. 269 (1867); *Dull's Appeal,* 113 Pa. 510, 6 Atl. 540 (1886); and *Heppenstall v. Leng,* 217 Pa. 491, 66 Atl. 991 (1907).

The *Heppenstall* court considered the remedy and quoted Bispham's Principles of Equity, section 568, wherein it states:

"The principle upon which the court acts in such cases is that justice sometimes requires that a man shall not be compelled to have hanging over him, or his title, for an indefinite time, some claim or demand or liability, which, if enforced, would sub-ject him to loss; but that he is entitled to have the questions relating to his rights settled at once and forever, or to have the claim against his rights

immediately enforced, or to be presently made secure against any future liability. . . . " *Heppenstall, supra.*

The purpose of such a bill is to bring before the court for final determination any outstanding claim or obligation which could be asserted in the future against the party seeking the bill. In order to obtain a bill quia timet, however, there must be some liability which, although not asserted as yet against a party seeking the bill, could be brought at any time. A bill quia timet is not issued by the court to protect a party from the general apprehension that his rights in property may at some time be infringed upon. The bill is to protect the party from an existing claim which rests in the hands of another, and which claim is contingent only because that other party has declined to take action on it as of the time the bill quia timet is sought.

In the case before us, the contingency which plaintiff fears is not that the Commonwealth of Pennsylvania has a judgment against the principals or has a judgment against plaintiff which plaintiff will necessarily pay at some future time; plaintiff's fear is that it *may* be adjudicated liable on its bond for the alleged breach of contract between AGI and the commonwealth. It has been alleged in the complaint only that the commonwealth has brought an action against plaintiff on the bond. As of the time this action was commenced, the commonwealth had no absolute claim which would inevitably require plaintiff to pay out money or which could be used against plaintiff. Plaintiff has the opportunity to defend against the assertions made by the commonwealth in the other action. Plaintiff can have no fear of liability until liability has been adjudicated and made absolute. A court of equity has no power to free plaintiff from fear of litigation

but may only free it from the fear that an absolute obligation will at some time be asserted.

The cases cited by plaintiff in support of its position do not, as we have noted, resolve the issue. Both *Morley Construction Co. v. Maryland Casualty Co.*, 90 F.2d 976 (8th Cir. 1937), and *Milwaukee Construction Co. v. Glens Falls Insurance Co.*, 367 F.2d 964 (9th Cir. 1966) reaffirm the principle of law that a surety is entitled to payment from the principal before any claim is asserted against the surety or before the surety pays out any money on that claim. However, as the court in the *Milwaukee* case notes, in quoting 72 C.J.S., Principal and Surety §303 (1951):

"Before maturity of the debt, or accrual of liability, for which he is surety, the surety has no right of action in equity to be indemnified against apprehended danger of loss by reason of his undertaking. . . . " 367 F.2d at 966. In this action, there is no maturity of a debt or obligation nor has there been an "accrual of liability"; there has only been an assertion of liability by the commonwealth against plaintiff.

Nor does the indemnity agreement executed between the principals and plaintiff herein create a right in the surety to obtain a bill quia timet. As we note, previously, the remedy is available, not by virtue of the particular provisions of any agreements between the parties, but rather because equity will protect the future rights of those whose circumstances compel such action. Judge Wright, of the Chancery Division of the English Courts, quoting Lord Justice Lindley's work on Partnership, 5th Ed. at 374, wrote that:

" '[I]n equity . . . even in the absence of any special agreement, a person who was entitled to contribution or indemnity from another could en-

force is right before he had sustained actual loss, provided loss was imminent. . . . Therefore a person who is entitled to be thus indemnified against loss is not obliged to wait until he has suffered, and perhaps been ruined, before having recourse to judicial aid.' . . . This statement of the law is an authority in favor of the view that *some relief can be given, but it does not specify the form or limit of the relief." Wolmershausen v. Gullick,* 2 Ch. 514, 527-8 (1893).

An indemnity agreement which provides that the surety may recover against the principal as soon as liability is asserted does not expand the power of a court of equity to provide a particular remedy. Accordingly, count IV of plaintiff's complaint for a bill quia timet was properly dismissed.

Nor does the equitable remedy of exoneration depend upon the particular provisions of any agreement between the surety and principal. Rather:

"The doctrine in such cases rests on the simple right, as between the principal and surety, that the surety has to be protected by the principal; a surety is awarded exoneration in order that mischief and circuity of action may be avoided; he is not obliged to make inroads into his own resources when the loss must in the end fall on the principal." *Milwaukee Construction Co., supra,* 367 F.2d at 966, quoting 72 C.J.S., Principal and Surety §303 (1951).

It has long been the law of Pennsylvania that:

"As soon as the surety's obligation to pay becomes *absolute,* he is entitled in equity to compel an exoneration, although the creditor has not demanded payment from him: Theobald's Principal & Surety 226; *Nesbit v. Smith,* 2 Brown C.C. 579; *Lee v. Brook;,* Mosely R. 318; Story's Equity 327." *Beaver v. Beaver,* 23 Pa. 167, 170 (1854). (emphasis in original) See also, *Ardesco Oil Co. v. N.A. Mining*

*and Oil Co.,* 66 Pa. 374 (1870), and *Almi Inc. v. Dick Corporation,* 31 Pa. Commw. 218, 375 A.2d 1343 (1977). Exoneration, like a bill quia timet, is a remedy provided by equity because a party is entitled to free and clear use of his property and should not be faced with illegal or potential encumbrances thereto. In *Smith v. Harry,* 91 Pa. 119, 124 (1879), the Supreme Court stated:

"In an early case it was said: 'Although the surety is not troubled or molested for the debt, yet at any time after the money becomes payable, the court will decree the principal to discharge it, *it being unreasonable that a man should always have such a cloud hanging over him . . . '"* (emphasis supplied) (citations omitted)

In all cases where a court of equity has ordered exoneration, however, the obligation of the surety has been made absolute; exoneration is not a proper remedy when there is no legal duty which requires the surety to make payment to the creditor. As the court stated in *Beaver, supra,* at 170:

"[T]he surety would not be entitled to exoneration before the debt became payable, because it is implied by the contract that he engaged to stand bound for the principal until the maturity of the obligation: *Cock v. Ravii,* 6 Ves. Jr. 283; *Antrobus v. Davidson,* 3 Mer. 569; *Theobald,* 227."

In the action before us, as we have already noted, there is no absolute obligation upon plaintiff to pay to the commonwealth the money it seeks in the action filed in Commonwealth Court. The complaint sets forth only that:

"On or about May 8, 1986, the Commonwealth of Pennsylvania, Department of Transportation commenced a civil action — law in the Commonwealth Court of Pennsylvania . . . against Great American *alleging,* inter alia, that it was damaged as a result of

Great American's alleged refusal to perform its obligations under the performance bond which arose as a result of AGI's *alleged* breach of its contract with the commonwealth on the project. Said action demands that judgment be entered against Great American in the amount of $170,205, plus interest and costs." (emphasis supplied)

From this paragraph we may infer only that an action has been filed against plaintiff by the commonwealth, which action makes allegations concerning both the performance bond and the underlying contract between AGI and the commonwealth. We can draw no conclusions as to either the alleged breach of contract by AGI or the alleged refusal of plaintiff to perform its obligations as required by the performance bond. There are no facts alleging that plaintiff's obligation to perform has become absolute; no facts are alleged which state that any debt is now payable by plaintiff. At the time this suit was filed, the creditor, the commonwealth, had no vested right which it could assert against either the principal, AGI Inc., or the plaintiff surety. Both the principal and the surety have the opportunity to raise defenses against the claims of the commonwealth,[4] and until those issues are resolved and the principal's liability to the commonwealth is determined, either by judgment, admissions, or agreement between the parties, the plaintiff's obligation is not absolute. The remedy of exoneration is unavailable to plaintiff in this action under the facts as set forth by plaintiff; count II of plaintiff's complaint was properly dismissed.

4. It is not alleged by plaintiff that the principal has defaulted, admitting liability and the extent of the damages, nor does plaintiff allege that it is obligated under the bond to pay the commonwealth, nor does plaintiff allege that it admits the allegations of the complaint filed against it by the commonwealth.

We turn next to counts I and III of plaintiff's complaint, seeking specific performance and indemnification. Plaintiff relies upon the paragraphs of the application and indemnity agreement set forth in its complaint and quoted previously in this opinion to claim that it is entitled to proceed against the principal as soon as "liability is asserted" against plaintiff surety. Inherent in plaintiff's request for the remedies of specific performance and indemnification in an equity proceeding is the presumption that plaintiff has no adequate remedy at law by which to protect its interests. However, plaintiff seeks in these two counts nothing more than money damages, which may be obtained in an action at law, even though it has disguised its request in terms of the more extraordinary remedies available in equity. We address count III, Indemnification, first.

Count III states, in paragraphs 27 and 28:

"(27) Great American has not yet determined the sum certain of the losses, expenditures and liabilities which it will incur as a result of the default, failure and breach of the defendants, but believes and therefore avers that said sum will total at least $85,000, the amount of the reserve set by it.

"(28) By reason of the foregoing, Great American, in addition to and independent of its right to demand the relief sought in counts I and II hereof, avers that defendants are liable over to Great American for all losses, expenditures and costs of Great American incurred in connection with the bond referred to in paragraph 10 herein and under the indemnity agreement based upon principals of contractual indemnity."

It was stated in *Levy v. First Pennsylvania Bank N.A.*, 338 Pa. Super. 73, 487 A.2d 857 (1985):

"The law of indemnity states that when a person

who, without active fault on his own part, has been compelled by reason of some legal obligation *to pay damages, . . .* he may recover from the person who is primarily liable." (emphasis supplied)

The subject matter of the action is money damages and as such does not require the court to utilize its equitable powers. "A court of equity lacks jurisdiction to entertain a cause of action for which there exists a full, complete, adequate remedy at law . . . . " *Tulio v. Commonwealth, State Horse Racing Commission,* 79 Pa. Commw. 305, 470 A.2d 645 (1984). A claim for money damages based upon a contract of indemnification may be brought in the form of a civil action for breach of contract when the right of plaintiff to be indemnified exists. However:

"It is clear that before the right of indemnification arises, the indemnitor must in fact pay damages to a third party. . . . " *F. J. Schindler Equipment Co. v. The Raymond Co.,* 274 Pa. Super. 530, 418 A.2d 533 (1980).

Although plaintiff may in the future bring an action for money damages to recover that sum which it may be compelled to pay to the commonwealth, plaintiff at this time has no right to be indemnified for a sum which it has not yet paid over. The contract of indemnification provides that the parties to it are required to pay said monies as soon as liability is asserted; however, the right to indemnification does not arise until the indemnitor "has been compelled, by reason of some legal obligation, to pay damages. . . . " *Builder's Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368 (1951).

Plaintiff may not invoke the equitable powers of the court merely because its remedy at law is not available at the time it brings the action. "[T]he adequacy of the legal remedy is not measured by the success or failure of a legal claim. Rather, in decid-

ing whether a remedy is adequate, it is the remedy itself, and not its possible lack of success that is the determining factor. . . . " *Chartiers Valley School District v. Virginia Manor Apartments,* 34 Pa. Super. 285, 489 A.2d 1381 (1985). Thus, because an action for indemnification cannot be brought until plaintiff has paid damages, plaintiff is not entitled to equitable relief for an action for money damages. As plaintiff has an adequate remedy at law to seek indemnification for losses which it may ultimately suffer as a result of its suretyship relationship with the principal, the dismissal of count III of plaintiff's complaint seeking indemnification was proper.

Finally, we address count I of plaintiff's complaint which seeks specific performance of the indemnification agreement executed herein.

"Specific performance is a proper remedy when the subject matter of an agreement is an asset that is unique or one such that its equivalent cannot be purchased on the open market. *Tomb v. Lavelle,* 298 Pa. Super. 75, 444 A.2d 666 (1981); see also the Act of November 1, 1979, P.L. 255, §1, 13 Pa.C.S. §2716." *Beckman v. Vassall-Dillworth Lincoln-Mercury,* 321 Pa. Super. 428, 468 A.2d 784 (1983).

"Specific performance should be granted only where the facts clearly establish plaintiff's right thereto, where no adequate remedy at law exists and where justice requires it. *Clark v. Pa. State Police,* 496 Pa. 310, 436 A.2d 1383 (1981)." *Rusiski v. Pribonic,* 426 Pa. Super. 545, 474 A.2d 624 (1984).

As with the indemnification count, plaintiff's request for specific performance is nothing more than a claim for money damages based upon the indemnity agreement. The "subject matter" of the indemnity agreement is money, neither unique nor un-

available if pursued through an action at law. Specific performance of the indemnity agreement would result in nothing more than a transfer of money from defendants to plaintiff, a remedy which is strictly legal in nature. Therefore, as plaintiff has an adequate remedy at law through which to obtain the relief sought in count I of its complaint, we conclude that equity has no jurisdiction to entertain that count and it was properly dismissed.