**ADMIRAL ORIENTAL LINE v. UNITED STATES.**

**ATLANTIC GULF & ORIENTAL S. S. CO., Inc., v. SAME.**

Nos. 33, 34.

Circuit Court of Appeals, Second Circuit.

Nov. 16, 1936.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Roger Siddall and Joseph Whelan, both of New York City, of counsel), for libelant Admiral Oriental Line.

Hunt, Hill & Betts (George Whitefield Betts, Jr., and Edna Rapallo, all of New York City, of counsel), for Atlantic Gulf & Oriental S. S. Co.

Lamar Hardy, U. S. Atty., of New York City (William E. Collins, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

These appeals are from decrees dismissing two libels in personam in the admiralty. In the first the libellant, the Admiral Oriental Line, alleged that it had been employed by the respondent, the Atlantic Gulf & Oriental Company, as ship's agent in the Phillipines, and had had charge of fitting out the steamship, "Elkton," on a voyage out of Pulupandan, on which she was lost with all hands in a typhoon. The "Elkton" was owned by the United States, and had been entrusted to the Atlantic Gulf & Oriental S. S. Co. as ship's agent under an operating contract. The "Elkton's" cargo owners sued the Admiral Oriental Line for its loss, and the Line was put to certain expenses in defending the suit, in which it was however successful. It claimed these expenses on the theory that as agent it had paid them upon its principal's account. The Atlantic Gulf & Oriental S. S. Co. answered and attempted to bring in the United States under the Fifty-Sixth Rule (28 U.S.C.A. following section 723). It alleged that the United States was the principal in the whole venture and as such responsible to its immediate agent, the Atlantic Gulf & Oriental S. S. Co. not only for any expenses to which it was put in its own defense, but for any which it might be compelled to pay to the sub-agent, the Admiral Oriental Line, under decree in the main suit. The second suit was filed directly under the Suits in Admiralty Act (46 U. S.C.A. § 741 et seq.) against the United States by the Atlantic Gulf & Oriental S. S. Co. for its own expenses in defending itself in the suit by the "Elkton's" cargo, to which it too had been made a party. Each libellant appealed, and the Atlantic Gulf & Oriental S. S. Co. filed assignments of error in the suit of the Admiral Oriental Line.

An agent, compelled to defend a baseless suit, grounded upon acts performed in his principal's business, may recover from the principal the expenses of his defense. We considered the question in Cory Bros. & Co. v. United States, 51 F.(2d) 1010, where we did not have to rule upon it; but the cases are unanimous, so far as we have found. Stocking v. Sage, 1 Conn. 519; Powell v. Newburgh, 19 Johns.(N.Y.) 284; The James Seddon, L.R. 1 Ad. & Ec. 62; In Re Famatina Development Corp'n (1914) 2 Ch.D. 271 (C.A.); Herrman v. Leland, 84 Misc. 82, 145 N.Y.S. 972; Restatement of Agency, § 439 (d). In Howe v. Buffalo, etc., R. R. Co., 37 N.Y. 297, and Clark v. Jones, 16 Lea (Tenn.) 351, notwithstanding that the agent had lost the suit brought by the third party against him, he recovered of the principal because his conduct was within the scope of his authority, though it was wrongful. The right of recovery in all these instances is only an example of the general doctrine that an agent may recover any expenditures necessarily incurred in the transaction of his principal's affairs. Bibb v. Allen, 149 U.S. 481, 499, 13 S.Ct. 950, 37 L.Ed. 819. The United States urges that there is a distinction between general and special agents, but we can see nothing in principle to justify one; it is indeed true that the implications from the two kinds of agency are often different, but they always depend upon the whole setting, like other implications, and there is no reason for saying that a general agent's defense of a suit laid upon his conduct of the principal's affairs is not an incident of the business. The doctrine stands upon the fact that the venture is the principal's, and that, as the profits will be his, so should be the expenses. Since by hypothesis the agent's outlay is not due to his mismanagement, it should be regarded only as a loss, unexpected it is true, but inextricably interwoven with the enterprise. The Atlantic Gulf & Oriental S. S. Co. insists, on its part, that the Admiral Oriental Line should have given it notice to defend the suit on its behalf. We can see no reason for this and none is suggested; the Atlantic Gulf & Oriental S. S. Co. was itself a party to the suit, and the Admiral Oriental

Line had a separate interest of its own to defend; certainly until the Atlantic Gulf & Oriental S. S. Co. volunteered to defend that interest, it was justified in protecting it itself. No doubt the amount of its expenditures is always open to contest, but their necessity is undoubted and it is that which imposes the liability.

■ The contract between the Admiral Oriental Line and the Atlantic, Gulf & Oriental S. S. Co. appointed the Line "General Freight Agents" for all ships which the principal was operating on behalf of the United States in the "Far East." The Line agreed to have sub-agents at all ports where it had no offices of its own, and to perform all the principal's duties under its contract with the United States; it was to receive for its services a commission on the gross freights with brokerage. Thus, if Atlantic Gulf & Oriental S. S. Co. was an agent of the United States, the Line was an agent of the Atlantic Gulf & Oriental S. S. Co. We therefore turn to the relations between that company and the United States. These were set forth in a contract whose substance was as follows. The Shipping Board appointed the company "its Agent to manage, operate and conduct the business of such vessel as it * * * may assign to the Agent", and the company agreed to act as such "in accordance with the directions" of the Board. The company was to "man, equip, victual and supply" the vessels as the Board required, and to pay all expenses and maintain them in seaworthy condition, all on the Board's account. It was to issue all documents on the Board's form, appoint sub-agents, collect freights which it must deposit in a bank approved by the Board and in the Board's name, and for which it was to account on forms prescribed by the Board. For this the company was to be paid in percentages on the gross receipts including salvage; out of these it was to bear its "administrative and general expenses of every nature," not including brokerage however, or commissions "for agency services rendered at foreign ports." The company was to furnish a bond for faithful performance of its duties and was forbidden to profit in any way from the services rendered. We find it difficult to see how this contract can be construed as creating anything but a straight agency for operating the Board's ships. As we have already said, the question at bar turns chiefly upon whose the venture is; upon who stands to win or lose. The United States not only described itself throughout as owner, but was in that position, letter for letter. It chose, not to charter its ships to the company, but to put them in trade on its own account; why it should not bear the hazard of defending unwarranted suits we cannot see. We have so construed almost identical contracts. Dietrich v. United States S. B. E. F. Corp. (C.C.A.) 9 F.(2d) 733; United States Shipping Board Merchant Fleet Corporation v. Dietrich (C.C. A.) 27 F.(2d) 681; Mallory S. S. Co. v. Garfield (C.C.A.) 10 F.(2d) 664. So has the Third Circuit. The Eurana (C.C.A.) 1 F.(2d) 684. The argument of the United States that the conduct of the parties put another interpretation on their relations is wholly unsupported by the evidence, and would in any event have been irrelevant. Had the Atlantic Gulf & Oriental S. S. Co. paid the Admiral Oriental Line, it would therefore have been in position to recover of the United States, for there is no difference between payment by an agent of his sub-agent's recovery against him, and payment of his own expenses. Obviously the same considerations apply to the suit of the Atlantic Gulf & Oriental S. S. Co. against the United States.

■ This disposes of the merits of the controversies, but not of some procedural difficulties. The causes of action are not cognizable in the admiralty; they are on all fours with Minturn v. Maynard, 17 How. 477, 15 L.Ed. 235, a case which the Supreme Court has never either overruled or even modified. However, the suit need not for this reason be dismissed; that of the Atlantic Gulf & Oriental S. S. Co. against the United States may stand as a petition under the Tucker Act, 28 U.S.C.A. § 41 (20), Cory Bros. & Co. v. United States, supra, 51 F.(2d) 1010; that of the Admiral Oriental Line v. Atlantic Gulf & Oriental S. S. Co. as an action at common law for money paid under section 41 (1) (b), title 28, U.S.Code (28 U.S.C.A. § 41 (1) (b) for the corporations were organized under the law of different states and the amount involved is over $3,000. This does not, however, dispose of the petition of the Atlantic Gulf & Oriental S. S. Co., attempting to implead the United States under the Fifty-Sixth Admiralty Rule; that must stand upon other grounds, if at all. We need not stop to inquire whether under New York practice—the libel being

treated as a complaint at law—it would be possible to interplead the United States. We may take the intervening petition as an original petition under the Tucker Act; as such it is as much within the jurisdiction of the district court as the libel of the Atlantic Gulf & Oriental S. S. Co. against the United States. So viewed the only question would be whether it stated a cause of action, which in turn depends upon whether an agent may sue before he has suffered loss, even when a third party is suing him. As a complaint in an action at law, such a petition would be premature; the plaintiff having paid nothing, may not yet call for indemnity. Brown v. Mechanics' & Traders' Bank, 16 App.Div. 207, 44 N.Y.S. 645; Brand v. Henderson, 107 Ill. 141; Kirby Lumber Co. v. Cummings & Co., 39 Tex.Civ.App. 220, 87 S.W. 231; Hidalgo Steel Co. v. Moore & McCormack Co. (D.C.) 298 F. 331. In equity, however, the rule is otherwise; before paying the debt a surety may call upon the principal to exonerate him by discharging it; he is not obliged to make inroads into his own resources when the loss must in the end fall upon the principal. Morgan v. Seymour, 1 Ch.Rep. 120; Dering v. Earl of Winchelsea, 1 Cox, 318; Glades County v. Detroit F. & S. Co., 57 F.(2d) 449 (C.C.A.5); Pavarini & Wyne, Inc., v. Title G. & S. Co., 36 App.D.C. 348; Fame Insurance Co.'s Appeal, 83 Pa. 396; Davis v. First National Bank, 86 Or. 474, 161 P. 93, 168 P. 929; Southwestern Surety Insurance Co. v. Wells (D.C.) 217 F. 294; Wolmershausen v. Gullick (1893) 2 Ch. Div. 514; Holcombe v. Fetter, 70 N.J.Eq. 300, 67 A. 1078. It is quite true that the contract between the United States and the Atlantic Gulf & Oriental S. S. Co. provided that the sub-agents should not be agents of the United States, and we will for argument assume that the United States was not directly liable to the Admiral Line, and that it could not have recovered from the United States even in equity under the doctrine of Keller v. Ashford, 133 U.S. 610, 10 S.Ct. 494, 33 L.Ed. 667. But it is enough that if the Atlantic Gulf & Oriental S. S. Co. had paid the Admiral Line, the disbursement would have been recoverable like any other; the eventual loss was to fall on the United States, which was for this reason in the position of a principal, and could be compelled to exonerate the surety. The United States was fully protected; it was able to contest both the liability of its agent—the surety—to the sub-agent, the creditor, and its liability to the agent, and it was required to pay only the sub-agent. The only possible objection remaining is that a cause of suit in equity may not be prosecuted under the Tucker Act. It is true that a bill for specific performance will not lie, United States v. Jones, 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90; nor will one to quiet title, United States v. Turner, 47 F.(2d) 86 (C.C.A.8); but if the bill sound in contract, and call only for the payment of money, the relief may be granted though only a court of equity would give it. United States v. Milliken Imprinting Co., 202 U.S. 168, 26 S.Ct. 572, 50 L.Ed. 980; Cramp & Sons Ship & Engine Bldg. Co. v. United States, 239 U.S. 221, 36 S.Ct. 70, 60 L.Ed. 238; (semble); South Boston Iron Works v. United States, 34 Ct.Cl. 174, 200; United States Cartridge Co. v. United States, 62 Ct.Cl. 214; Clifton Manufacturing Co. v. United States (D.C.) 3 F. Supp. 508, 512, reversed on other grounds in 293 U.S. 186, 55 S.Ct. 133, 79 L.Ed. 276.

The Atlantic Gulf & Oriental S. S. Company should therefore have recovered upon its libel against the United States, treated as a petition at law under the Tucker Act. The Admiral Oriental Line should have recovered upon its libel against the Atlantic Gulf & Oriental S. S. Co., treated as a complaint at law. The Atlantic Gulf & Oriental S. S. Co. should have had a decree upon its intervening petition (treated as an original petition in equity under the Tucker Act), directing the United States to pay the claim of the Admiral Oriental Line.

Decrees reversed; causes remanded with instructions to proceed according to the foregoing.