## WILLIAM G. YOUNG & CO., Inc. v. DYER.

United States District Court
S. D. New York.
May 15, 1953.

William Whynman, New York City, for plaintiff.

Abraham Fishbein, New York City, for defendant.

McGOHEY, District Judge.

The plaintiff, a New York corporation and duly licensed customs broker, sues to recover from a resident of Guatemala $5,-270.97 for payments made on her account and services rendered. The case was tried without a jury. The defendant rested at the end of the plaintiff's evidence.

Upon the evidence the Court finds the following facts. For many years prior to 1942, the plaintiff or, at least, Mr. Young, its president, had acted as customs broker for the defendant who was then importing novelty jewelry from China. Some time

in 1942, the defendant having returned from China, the parties entered into an oral agreement by which the plaintiff undertook to perform the usual customhouse services for defendant in connection with her new business of importing printed cottons into the United States from Guatemala. She later married and took up residence there. The plaintiff was to advance duties and all expenses in connection with the importations. The merchandise was to be imported for the defendant's account under the name of Creations Simonne, a trade name under which the defendant conducted a business at 22 East 55 Street, New York, N. Y., for sale to customers in the United States to whom she would direct the plaintiff to make delivery. Creations Simonne charged such customers the prices shown on the consular invoices plus a "commission." The agreement provided that the plaintiff would repackage and deliver the merchandise and would also bill Creations Simonne's customers and deposit collections in the defendant's bank here. The defendant agreed to pay plaintiff its brokerage fees, extra compensation for the additional services, and to reimburse it for all advances made in connection with the importation of her goods.

During the period from August 28, 1943 to September 12, 1945, the plaintiff made 35 "entries" for the account of Creations Simonne. Pursuant to their agreement, the plaintiff followed the common and usual practice of entering the merchandise in its own name, as consignee of record, but "for account of Creations Simonne % W. G. Young Co., Inc." With each shipment, the defendant forwarded to the plaintiff sworn documents certified by the American Consul at Guatemala City, for filing by the plaintiff with the Customs in making the "entries." The plaintiff, also in accordance with the common practice of brokers, copied onto the "entries" the amount and valuation of the merchandise as recited in the consular invoices, relying upon them to be true. It had no other source of knowledge of the value of the merchandise involved and had no cause to believe that the stated values were untrue. The plaintiff did not, within ninety days after any "entry" made for the defendant's account, file an "owner's declaration," i. e., a statement by the defendant that she was the owner of the merchandise covered by the entry and would pay all original, "increased" or "additional" duties thereon.[1] There is no evidence that she was ever requested by the plaintiff to execute such declarations.

Contemporaneously with her importations for her own account, the defendant was also selling printed cottons directly from Guatemala to a New York department store and to a man named Lenart. Shipments to these two customers were consigned directly to them. The plaintiff did not serve as their broker. During this time the defendant also sent seven consignments of printed cottons to her brother, a Mr. Bonaventure, also at 22 East 55 Street, New York, N. Y.[2] In these transactions, as in those for the defendant's account, the plaintiff acted as broker and entered the goods in its own name as consignee of record but for Bonaventure's account. "Owner's declarations" by the latter were filed as to the seven "entries" made for his account.

All of the cottons so imported came, in the course of Customs routine, to be examined for valuation by Examiner Christ. He discovered that though the merchandise covered by all the "entries" was in his opinion similar, the prices on the consular invoices for so much of it as was consigned to the department store were higher by about a third than the prices for that which was consigned to the plaintiff for the defendant's and Bonaventure's accounts, and to Lenart. Christ thereupon in the early part of November, 1944 informed the plaintiff, Bonaventure and Lenart, apparently

1. If such declarations had been filed, the plaintiff would have been exempted thereby from liability for such duties. Tariff Act of 1930, § 485(d), 19 U.S.C.A. § 1485(d) (3).

2. It seems likely, though there is no direct evidence on the point, that Bonaventure ran the business of Creations Simonne for the defendant at this address. During all this time she was living in Guatemala where she and her husband conducted several other business ventures.

informally by telephone, of his discovery and opinion and advised them that unless the "entries" filed for their merchandise were amended to state the same values as the store had reported, he would proceed to make and file formal appraisals of their merchandise at the higher values. The defendant had been in New York just prior to this time and was aware of Examiner Christ's views. In any event, the plaintiff promptly wrote on November 27, 1944 and informed her of Christ's message. She was also informed that the plaintiff had "contacted" its lawyer "who advised fighting the case" and she was asked to say by return mail "whether you wish me to follow this procedure." Young said he believed "we should see this matter through in the Customs Court" because "Mr. Christ is being very arbitrary." He also said he had learned that Lenart "intends to fight the assessment." The defendant's response was, in summary, that, while Christ and the Customs were indeed being arbitrary, she would rather pay, even "arbitrarily" imposed duties, to the United States Treasury than "to some sharp lawyer who would only charge us twice as much;" and that she would not let the plaintiff be the "goat" in the matter. She was of the opinion that they should await the outcome of Lenart's case. If he succeeded she thought that would be a helpful "precedent." Matters remained in this posture for a period of many months. On one occasion which appears to have occurred during this period, the defendant came up to New York and together with Young conferred with Examiner Christ who repeated his opinion to her. Thereafter she told Young that she wanted him to do whatever he thought necessary in order "to keep her skirts clean" and to keep her out of trouble. The outcome of Lenart's case is not disclosed by the evidence. But it is clear that the plaintiff and its attorney eventually changed their opinions as to the probability of success in litigation and none was undertaken by them. Continued conferences by Young and his attorney with the Customs officials resulted in postponing the filing of a formal appraisal by Christ at the higher valuation and the consequent mandatory imposition of substantial "additional" duties pursuant to the Statute.[3]

While these conferences were proceeding, the parties were discussing the matter by mail but had reached no agreement by November 21, 1946 as to how it should be disposed of. On that day the Collector of Customs wrote to the plaintiff asserting a new claim pursuant to the Statute[4] for $48,429.65 on account of alleged frauds in connection with "various importations of cotton piecegoods made by you and Creations Simonne of 22 East 55th St., New York, N. Y. covering a period from August 28, 1943 to September 12, 1945." At the same time a similar claim for the same amount was asserted against Bonaventure "on account of various importations of cotton piecegoods made by you and [the plaintiff] covering a period from August 28, 1943 to September 12, 1945." On November 25, 1946, the plaintiff wrote the defendant about this new claim and said:

"Inasmuch as the importations were for your account, we acting solely as your Customs Brokers and Agents, it is suggested that you engage Counsel immediately at your expense to represent your and our interests.

"If you do not defend this claim, the Customs undoubtedly will proceed to obtain judgment and take steps to enforce collection thereof which may include suit on the judgment against you in Guatemala. If you do not retain Counsel to represent and protect our interests, we shall be compelled to engage Counsel and hold you accountable."

The defendant did not engage counsel to represent the plaintiff's interest, nor did she ever reply to its threat to engage counsel and hold her responsible. The plaintiff nevertheless, on March 27, 1947, petitioned

3. 19 U.S.C.A. § 1489. These are in the nature of penalties separate from and above any "increased" duties resulting from an increase in valuation.

4. 19 U.S.C.A. § 1592.

the Collector of Customs to mitigate the fraud claim. This was followed by a supplemental petition and further negotiations, which resulted on November 14, 1947 in mitigation to $2,000. The defendant's present attorney, Mr. Fishbein, had, on February 20, 1947, filed a petition for mitigation on behalf of Bonaventure only. This was considered by the Customs officials together with the plaintiff's petition in the extended negotiations, and resulted, also on November 14, 1947, in mitigation of the claim as to Bonaventure only to $360.-80 on the seven importations by the plaintiff for his account as to which, as has been noted, "owner's declarations" had been filed. Whether this mitigation was conditioned on amendment of the seven "entries" and payment of increased duties does not appear. In any event, the $360.80 was paid and Bonaventure was advised by the Collector of Customs by letter dated November 14, 1947 that "the case, *in so far as the Government's claim against you is concerned,* is being marked closed on our records." [Emphasis supplied.] The plaintiff completed payment of the $2,000 on March 12, 1948. On March 26, 1948, the Collector of Customs advised it by letter that, payment having been received, the fraud claim "in connection with various importations of cotton piecegoods entered during the period from August 28, 1943 to September 12, 1945 * * * *has now been closed on the records of this office.*" [Emphasis supplied.] This mitigation, however, was conditioned upon eventual amendment of the 35 "entries" made for the account of Creations Simonne so as to state the higher valuations and payment of the "increased" duties thereon. The plaintiff advised the defendant of the mitigation and payment and repeatedly requested her either to execute amended entries or to authorize it in writing to do so. She did not reply to these requests. She also ignored the plaintiff's letters and cables asking written authority to pay the increased duties. Eventually, in the summer of 1948, the plaintiff filed 35 amended entries and

paid increased duties thereon amounting to $1,140.97. The value of Mr. Young's services in attending the conferences, one of which was in Washington, D. C., and his services in preparing and filing the amended entries is $500. The plaintiff also paid out $65 in disbursements. The plaintiff's attorney has submitted to it a bill for $1,-500 for services rendered in the negotiations and settlement. It has not been paid. The only testimony as to its reasonableness came from the attorney himself. He described his work only in the most general way with no specification of time or other details. I find $1,500 too high. $850 is fixed as a reasonable fee.

It seems abundantly clear that the plaintiff is entitled to recover the increased duties. The facts, as found, are that the defendant promised to pay even "arbitrarily" imposed duties and directed Young to do whatever he thought necessary to keep her out of trouble. The payment of the increased duties was required of the plaintiff in the course of his principal's business pursuant to their agreement and for her account. It is argued that the defendant never "in terms" authorized the amendments or payment of increased duties, and that therefore the plaintiff was a mere volunteer in making the payments. This ignores the facts. The defendant, it is true, thought that Christ was wrong. But she refused to engage counsel to litigate the question of valuation. The plaintiff was not required to sit by and await the imposition of large "additional" duties under section 489 [5] as well as the "increased" duties, for all of which he, as consignee, would have been liable to the Government. Indeed it was Mr. Young's work that forestalled the former, thus reducing his own and the defendant's expenses. The expense for the latter was certainly one incurred in performance of the defendant's business and so, even without the directions she gave Young, she would have to reimburse the plaintiff for that expense.[6] She is likewise liable for Young's services valued at $500 and his expenses of $65, and

5. 19 U.S.C.A. § 1489.

6. Admiral Oriental Line v. United States, 2 Cir., 86 F.2d 201, 202; The Toledo, 2 Cir., 122 F.2d 255.

the counsel fee of $850. These were all necessary and were certainly within the terms of the agreement between the parties. The $2,000 paid to settle the fraud claim, however, stands on a different footing. It is clear that the defendant never authorized the plaintiff to compromise or pay anything on that claim. Indeed she ignored all requests for such authority. Accordingly, the plaintiff could recover this item only if it could show facts which would establish its actual liability on the claim.[7] Under the statute[8] a consignee such as the plaintiff was is liable on a fraud claim such as this only if it makes a false statement in an entry "* * * without reasonable cause to believe the truth of such statement * * *." But the facts as found from Young's testimony are that he copied onto the entries the valuations as shown on the consular invoices; that he believed these to be true and relied on them and that he had no other source of knowledge as to the valuation of the merchandise. Thus the plaintiff has not only failed to establish its actual liability but has established the contrary. In paying the $2,000, therefore, it was a volunteer and may not recover it.

Judgment may be entered in accordance with the foregoing findings and conclusions.