**MILWAUKIE CONSTRUCTION CO.**
(Inc.), a corporation, F. H. St. Pierre
and Mary St. Pierre, Appellants,

v.

**GLENS FALLS INSURANCE COMPA-
NY, a corporation, Appellee.**

**No. 21022.**

United States Court of Appeals
Ninth Circuit.

Oct. 24, 1966.

Robert Morgan, of Erlandson & Morgan, Milwaukie, Or., for appellants.

Marshall C. Cheney, Jr., of Mize, Kriesien, Fewless & Cheney, Portland, Or., for appellee.

Before HAMLEY, HAMLIN and BROWNING, Circuit Judges.

---

HAMLIN, Circuit Judge.

In 1964 F. H. St. Pierre and Mary St. Pierre were officers and directors of Milwaukie Construction Company (Milwaukie), a general construction firm. Between April and July, 1964, Milwaukie had four contracts to build public buildings and made application to Glens Falls Insurance Company, appellee herein, for performance and payment bonds as required by the contracts. To secure the issued bonds totaling more than $600,000, Glens Falls required Milwaukie and the St. Pierres to execute a contract of indemnity. Paragraph four of this contract was as follows:

> " * * * that if the surety shall set up a reserve to cover any claim, suit or judgment under any such bonds, the indemnitors will, immediately upon demand, deposit with the surety a sum of money or acceptable security equal to such reserve, such sum to be held by the surety as collateral security on said bonds; * * * and if the surety shall bring suit to enforce any obligation of the indemnitors under this instrument, the indemnitors shall be liable for the costs and expenses, including fees of attorneys, incurred in prosecuting such suit, and such costs and expenses shall be included in any judgment that may be rendered against the indemnitors."

Milwaukie defaulted upon these construction jobs.

On July 20, 1965, appellee filed an action in the United States District Court for the District of Oregon against Milwaukie and the St. Pierres, appellants herein, asking for specific performance of the above provision of the indemnity agreement. At the time of trial it was admitted that Milwaukie was in default under four construction contracts and that demand had been made upon appellee for performance and payment under each of its bonds.

At the time of trial appellee estimated that it would be obligated to pay approximately $83,000 to the beneficiaries of the bonds, but since the contracts had not yet been completed the exact amount of the loss could not be determined. Appellee had previously set up a reserve to cover its contingent loss. It was also admitted that demand had been made upon appellants under the indemnity agreement to deposit with appellees money or acceptable security in the amount of $83,000, but the appellants had not complied.

After trial the district court made findings of fact in accordance with the above statement and concluded as follows:

> "Under the contract of indemnity entered into between plaintiff and defendants plaintiff is entitled to a decree of this court requiring defendants and each of them to specifically perform the agreement set forth in paragraph 4 of the findings of fact hereinabove by exonerating plaintiff and by depositing with plaintiff money or acceptable security in the amount of $83,000."

The district court entered a decree in accordance with the above conclusion of law and in addition fixed the sum of $3,500 as attorneys fees to be awarded to appellee.

The district court had diversity jurisdiction, the appellee corporation having been organized and existing under the laws of New York and the appellants being citizens of the state of Oregon. This court has jurisdiction under 28 U.S. C. § 1291.

Appellants' only specification of error is "the court erred in assuming equitable jurisdiction of this matter, as the facts and circumstances of the immediate case do not justify the application of equitable relief, and furthermore plaintiff has a remedy at law which is adequate." We see no error in the action of the district court, and affirm.

Appellant contends that since appellee had an adequate legal remedy the district court should not have assumed equity jurisdiction. The facts indicate there was not an adequate remedy at law at the time the suit was brought. "The test of the jurisdiction of a court of

equity is whether facts exist at the time of the commencement of the action sufficient to confer jurisdiction on the court." Flaherty v. Bookhultz, 207 Or. 462, 291 P.2d 221, 224 (1955).

At the time of the commencement of this action appellee could not determine its liability resulting from Milwaukie's default on its contracts. The contracts had not been completed and it was not known what recoveries might be made and what further payments would be received. In the complaint the liability of appellee was estimated at approximately $45,000. At trial on February 25, 1966, the exact amount of appellee's liability as surety still could not be definitely determined, but the estimate of the ultimate liability had risen to approximately $83,-000.

■ It is clear that where appellee knew it was going to have liability claims filed against it but did not know the amount of those claims, the legal remedy of money damages would not be adequate.

The right to equitable relief under the circumstances of this case is discussed in many authorities. In 50 Am.Jur., Suretyship § 225 (1944), it is said:

"Not only does a bill quia timet lie to compel the principal to pay the debt after it has become due, but its use has also been extended to compel the principal to furnish the surety indemnity against possible loss where the surety has reasonable grounds for anticipating that his rights are being jeopardized and that he will incur a liability by threatened conduct of the principal. Applying similar principles, the courts have sustained a right on the part of the surety to sue for specific performance of an agreement to furnish him indemnity. Thus, where the principal agreed that he would turn over choses in action to indemnify his surety in consideration of the suretyship, it was held that a court of equity would decree specific performance where the principal was in failing circumstances."

Similarly, in 72 C.J.S., Principal and Surety § 303 (1951), it is said:

"Before maturity of the debt, or accrual of liability, for which he is surety, the surety has no right of action in equity to be indemnified against apprehended danger of loss by reason of his undertaking. After maturity, however, in the absence of a present remedy at law, although he has not paid and has not been troubled by the creditor, or asked by him to pay, he has the right, before payment, to go into a court of equity, at any time, to compel the principal to exonerate him from liability or to pay the debt, or to secure him against loss, provided no rights of the creditor are prejudiced thereby. The doctrine in such cases rests on the simple right, as between the principal and surety, that the surety has to be protected by the principal; a surety is awarded exoneration in order that mischief and circuity of action may be avoided; he is not obliged to make inroads into his own resources when the loss must in the end fall on the principal.

"It is not essential that the claim of the surety for relief should depend on the fact that he will incur irreparable injury; nor must he show any fraudulent disposition of property, or the presence of a wrongful purpose, or special reason for fearing loss; and the insolvency of his surety will not preclude him from maintaining the bill."

In discussing circumstances where equitable relief may be given, the court in Morley Const. Co. v. Maryland Cas. Co., 90 F.2d 976, 977 (8th Cir. 1937) states:

"In Story's Equity Jurisprudence (14th Ed.) the following statement is found: 'Sec. 1142 * * *. The manner in which this aid is given by Courts of Equity is of course dependent upon circumstances. They interfere sometimes by the appointment of a receiver to receive rents or other income; sometimes by an order to pay a pecuniary fund into court; sometimes by directing security to be given or money to

be paid over; and sometimes by the mere issuing of an injunction or other remedial process; thus adapting their relief to the precise nature of the particular case, and the remedial justice required by it.'

"See, also, Sections 1011 and 1168.

"In New Orleans v. Gaines' Adm'r, 131 U.S. 191, 212, 9 S.Ct. 745, 752, 33 L.Ed. 99, the Supreme Court of the United States quotes approvingly from Lord Redesdale's Treatise (4th Ed., p. 148), as follows: 'A court of equity will also prevent injury in some cases by interposing before any actual injury has been suffered, by a bill which has been sometimes called a bill quia timet, in analogy to proceedings at the common law, where in some cases a writ may be maintained before any molestations, distress, or impleading. Thus a surety may file a bill to compel the debtor on a bond in which he has joined to pay the debt when due, whether the surety has been actually sued for it or not.' "

In Chicago Title & Trust Co. v. Fox Theatre Corp., 91 F.2d 907, 910 (2d Cir. 1937), the court states:

"Philadelphia Company wanted assurance that it would not have to advance such sums from its own resources. It therefore demanded a guaranty that, if Market failed to provide the money, Fox, the parent corporation, would. As already explained, Market's default would cause Philadelphia Company no actual loss until the latter was compelled to pay the mortgagee. Before payment a surety may not maintain an action at law against the principal debtor; *but in equity the rule is otherwise. Upon maturity of the debt a surety has an equitable right to exoneration from the debt and may call upon the principal to discharge it. Admiral Oriental Line v. United States, 86 F.(2d) 201, 204 (C.C.2), and cases there cited."* (Italics added)

Appellant next contends that even if the remedy at law was inadequate, courts under similar circumstances have assumed equity jurisdiction only if a definite

and ascertainable fund was clearly in existence. Appellant has cited us to no case which makes such a statement as a matter of law or which is authority for such a statement. The cases cited by appellant have included an ascertainable fund. On the other hand, in Admiral Oriental Line v. United States, 86 F.2d 201 (2d Cir. 1936), there was no "fund" involved. The court at 201 stated through Judge Learned Hand:

"So viewed the only question would be whether it stated a cause of action, which in turn depends upon whether an agent may sue before he has suffered loss, even when a third party is suing him. As a complaint in an action at law, such a petition would be premature; the plaintiff having paid nothing, may not yet call for indemnity. [Citing cases] In equity, however, the rule is otherwise; before paying the debt a surety may call upon the principal to exonerate him by discharging it; he is not obliged to make inroads into his own resources when the loss must in the end fall upon the principal. [Citing cases]"

In the present case, while there was no "fund" involved of the kind found in most cases, there was evidence of particular property which appellant F. H. St. Pierre owned, some of which he admitted transferring out of the country to get it beyond reach of his creditors. St. Pierre admitted he owned an automobile, life insurance, a savings account and stock in an insurance company worth $9,000. He also admitted that he received $10,000 from the sale of real estate and that he had, after appellee demanded compliance with the indemnity agreement, transferred this money to his brother in Canada to get it out of reach of his creditors. He further admitted that he had transferred another piece of real property worth $10,000 but that he had not yet received the consideration for the transfer.

Appellant finally argues that there is no equity jurisdiction because a court cannot find a person in contempt for failing to pay over money he does not have.

Whether or not contempt is a proper method to enforce the decree for specific performance has not been reached in this case. No contempt order has been issued by the district court. It will be time enough to consider that point if, as and when it is ever reached.

Under the facts of this case, we find there was no error in the judgment entered by the district court.

Judgment affirmed.