**Harry E. EAKIN, Indiana Insurance Commissioner, Liquidator of Allied Fidelity Insurance Company, Plaintiff,**

v.

**CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Defendant.**

**No. 87 C 5270.**

United States District Court,.
N.D. Illinois, E.D.

July 12, 1988.

Dennis C. Waldon, Keck, Mahin & Cate, Dennis M. O'Dea, Monica L. Thompson, Chicago, Ill., for plaintiff.

David M. Meister, Katten, Muchin & Zavis, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

In its Memorandum Opinion of January 25, 1988, this court denied Continental's motion to dismiss Allied's action to enforce a stand-by letter of credit ("the Letter of

Credit"). *Allied v. Continental,* 87 C 5270 ("Opinion"). The Letter of Credit permitted Allied to seek payment from Continental as soon as Allied incurred liability under surety bonds procured from Allied by Continental's customer, Bill's Coal Company. In return, Allied had to present to Continental certification documents committing Allied to return any funds not ultimately needed to satisfy its obligations as surety. The court ruled that, although Allied was in liquidation in Indiana, Allied's liquidator could enforce the Letter of Credit. The court also ruled that, by signing certification documents promising that Allied would return the unused funds, the liquidator had satisfied the certification requirements *as a matter of law.* The liquidator has now moved for summary judgment.

## DISCUSSION

Continental argues that, notwithstanding this court's earlier ruling, the liquidator has not provided conforming certification documents. It insists that the liquidator's signature on papers certifying Allied's obligations with respect to the funds does not suffice because it makes Allied, not the liquidator, responsible for return of the funds. Only if the liquidator promises that he will be *personally* liable, Continental claims, can the liquidator enforce the Letter of Credit.

On its face, this argument appears to ignore this court's earlier ruling. There it was noted that Allied's rights under the Letter of Credit passed to the liquidator pursuant to the Indiana liquidation order, and that, by signing the certification document, the liquidator had assumed Allied's obligations under the instrument. "Any breach of these obligations will be directly attributable to Liquidator...." *Opinion* at 4. Thus, Continental's argument that the certification document would render Allied, but not the liquidator, liable for any breach is frivolous; under the liquidation order, the liquidator and Allied merged.

Yet, Continental has recently added an element to this litigation which requires some discussion. In a peculiar procedural move, Continental counterclaimed against the liquidator for a declaratory judgment as to the liquidator's duties with respect to any funds that Continental must pay to Allied. Continental wants this court to declare that the liquidator may only use the funds to pay Allied's obligations under the surety bond, with the remainder of the funds reimbursed to Continental.

By structuring its request as a "counterclaim" for declaratory relief, Continental (really Continental's counsel) demonstrates serious misapprehension about declaratory judgments. Continental has refused to perform under the Letter of Credit, and Allied has sued to recover for this alleged breach. The time for declaratory judgment has passed.

Continental's arguments in support of its "counterclaim", however, do shed some light on its concerns in this litigation. Apparently, Continental fears that the liquidator's promise to reimburse the unused funds will be treated by the liquidation court as an unsecured debt, thereby forcing Continental to join the ranks of the general creditors in seeking to recover the funds. In other words, Continental's argument that Allied, not the liquidator, would be obligated by the liquidator's certification was really an argument that the liquidator would be liable in his *official* but not his *individual* capacity. And Continental's demand for the liquidator's personal promise to reimburse—i.e., for liability in his individual capacity—was designed to enable Continental to sue the liquidator outside the bankruptcy proceedings for the full amount of the unused funds. Since the liquidator refuses to provide such a promise, Continental claims, it is entitled either to a revocation of the Letter of Credit or to an order of this court binding the liquidator and, more importantly, the liquidation court to return the full amount of the unused funds.

Continental's argument derives from *Pastor v. National Republic Bank of Chicago,* 76 Ill.2d 139, 28 Ill.Dec. 535, 390 N.E.2d 894 (1979). In *Pastor,* the Illinois Supreme Court held that the general rule against the transferability of letters of credit did not apply where the beneficiary

had gone into liquidation and its rights had vested as a matter of law with a liquidator. The Court specifically limited its ruling, however, to those situations in which the beneficiary has fully performed prior to the liquidation:

> [T]he original beneficiary of the credit had performed according to its terms and only the right of recovery under it had been transferred by operation of law to the liquidator. The beneficiary chosen by the customer has performed and the customer has received the protection which the nonassignability rule was designed to effect.

*Id.* 28 Ill.Dec. at 538, 390 N.E.2d at 898.

Continental has not argued that the Letter of Credit here is invalidated by the assignment to the liquidator. But it has relied on the reasoning of *Pastor* to insist that it is entitled to an assurance that it will be reimbursed with all unused funds. Otherwise, Continental claims, the assignment increases its risk under the Letter of Credit, and *Pastor*'s exception to the non-assignability rule does not apply.

Yet, the risk to which *Pastor* referred was the risk that the beneficiary would fail to perform its duty, not to the issuer, but to the *customer* who procured the Letter of Credit. The rule against assignability protects the customer (Bill's Coal Company) from the danger that the issuer (Continental) will be forced to pay under the Letter of Credit to a party (the liquidator) other than the original beneficiary (Allied) —a party who may be less likely to satisfy its obligations to the customer. In this case, Allied fully performed its obligation to Bill's Coal Company by issuing the surety bond. As in *Pastor,* the beneficiary (here Allied) had, at the time of the assignment to the liquidator, "a right to demand and receive payment under the credit upon the presentation of certain complying documents." *Id.* Thus, *Pastor* might well require this court to rule for the liquidator irrespective of the alleged additional risk Continental faces on account of the liquidation.

This court, however, need not resolve that issue. Contrary to Continental's insistence, the assignment to the liquidator in no way increases Continental's (or, for that matter, Bill Coal Company's) risk under the Letter of Credit.

The certification required by the Letter of Credit is a form of "collateral security provision": it permits Allied to obtain funds from Continental to secure its potential liability before such liability attaches, while it imposes an obligation on Allied (now on the liquidator) to return any unused funds to Continental. *See Safeco Insurance Co. of America v. Schwab,* 739 F.2d 431 (9th Cir.1984); *Milwaukie Construction Co. v. Glens Falls Insurance Co.,* 367 F.2d 964 (9th Cir.1966). This provision would give Continental an equitable lien on the funds, *see W.E. Erickson Construction Co. v. Congress–Kenilworth Corp.,* 132 Ill.App.3d 260, 87 Ill.Dec. 536, 477 N.E.2d 513 (1985), *aff'd,* 115 Ill.2d 119, 104 Ill.Dec. 676, 503 N.E.2d 233 (1986), and would have ensured Continental's ability to recover the funds in the liquidation court, irrespective of whether the certification came before or after the order of liquidation.

Moreover, even were the certification not construed as creating an equitable lien, Continental still could not claim that its risk increased on account of the appointment of the liquidator. Indeed, if anything, Continental's position strengthened with the liquidator's arrival. For had Continental obtained only an unsecured promise from pre-liquidation Allied, it would have been relegated to the role of a mere general creditor when Allied entered liquidation. The undertaking of the liquidator on behalf of Allied, however, gives Continental's claim Class 1 priority. Ind.Code § 27–9–3–40(1)(A) (1979).

Thus, Continental loses nothing by virtue of the assignment of the Letter of Credit to the liquidator and the liquidator's signing of certification documents obligating Allied to reimburse the unused funds.[1] The liqui-

---

1. Continental alluded in one of its briefs to an alternative source of increased risk purportedly

engendered by the liquidation—that the liquidation court might rule that Allied's obligation

dator is therefore entitled to summary judgment on his complaint. Unfortunately, this ruling does not quite resolve the case.

 In his complaint and motion, the liquidator seeks *damages* for Continental's refusal to make good on its obligations under the Letter of Credit. In so doing, the liquidator ignores entirely the nature of his case. The "collateral security provision" gives the liquidator the right to obtain Continental's money before Allied has suffered any losses under the surety bond. *See Safeco Insurance Co. of America v. Schwab,* 739 F.2d 431 (9th Cir.1984); *Milwaukie Construction Co. v. Glens Falls Insurance Co.,* 367 F.2d 964 (9th Cir.1966). To date, there simply are no damages for this court to award.

What the liquidator really wants is for this court to order Continental to turn over the funds in return for the requisite certification documents; he wants specific performance. He can have it.

## CONCLUSION

Summary judgment on the issue of liability is entered for the liquidator. The liquidator should prepare an order for this court's signature which will require Continental to perform its obligations under the Letter of Credit in return for the liquidator's conforming certifications.

on its surety bond is a secured rather than an unsecured debt. How this could possibly subject Continental to *greater* liability than if Allied had not gone into liquidation escapes this court. If the liquidation court decides that the debt is unsecured, Continental will receive a windfall in that it will receive reimbursement of the amount not paid pursuant to the bond. If, on the other hand, the debt is held to be secured, Continental will be in the same position as if Allied had not been liquidated.