Harry E. EAKIN, Indiana Insurance Commissioner, Liquidator of Allied Fidelity Insurance Company, Plaintiff,

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Defendant.

No. 87 C 5270.

United States District Court, N.D. Illinois, E.D.

Aug. 12, 1988.

**364**

Dennis C. Waldon, Dennis M. O'Dea, Monica L. Thompson, Keck, Mahin & Cate, Chicago, Ill., for plaintiff.

David M. Meister, Katten, Muchin & Zavis, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

In two previous Memorandum Opinions, this court attempted to explain to defendant Continental Illinois National Bank ("Continental") that it had to live up to the commitments it gave to Allied Fidelity Insurance Company ("Allied") under a standby letter of credit ("the Letter of Credit") despite the fact that Allied's rights had vested in its liquidator, Indiana Insurance Commissioner Harry E. Eakin ("the liquidator"). *Eakin v. Continental*, 687 F.Supp. 1259 (1988) ("Eakin"); *Allied v. Continental*, 677 F.Supp. 562 (1988) ("*Allied*"). Continental, however, refused to listen, and pursued a course of hyper-technical arguments and twisted interpretations of this court's rulings which prolonged this litigation. Nevertheless, because the liquidator did not request sanctions, *see* Fed.R.Civ.P. 11 ("Rule 11"), and because Continental's positions only bordered on the frivolous, this court chose not to inquire into the propriety of imposing Rule 11 sanctions.

Now Continental has done it again, frivolously objecting to the court's decision to grant the liquidator specific performance of the Letter of Credit. As will become evident below, this time Continental has gone too far.

## BACKGROUND

This case originated with Continental's refusal to pay Allied $805,000 pursuant to the Letter of Credit. Continental's customer, Bill's Coal Company, had procured the credit from Continental for the benefit of Allied in return for Allied's issuance of surety bonds ("the Surety Bonds") on behalf of Bill's Coal Company. The Letter of Credit required Continental to pay Allied upon presentation of a sight draft and documents certifying that Allied had incurred liability under the Surety Bond, that it would use the funds only to satisfy that liability, and that it would return to Continental funds not used for that purpose.

On July 8, 1986, Allied's vice-president provided Continental with a sight draft and certification documents, but Continental refused to honor the draft on the basis of typographical errors in the documents.

By the time Allied received notice of Continental's rejection, it had gone into liquidation in Indiana. When the liquidator subsequently corrected the documents, signed them on behalf of Allied and presented them to Continental, Continental again rejected them. This time, Continental asserted that, because title to Allied had vested in the liquidator, the liquidator had to promise not that Allied would reimburse unused funds, but that he would. The liquidator refused and filed suit in this court, naming Allied as plaintiff. Continental promptly moved to dismiss on the

grounds that the liquidator, not Allied, was the proper plaintiff, and that the liquidator's failure to personally guarantee reimbursement rendered the certification documents non-conforming.

In *Allied*, this court denied Continental's motion. The court ruled that, although the liquidator, not Allied, was the real-party-in-interest, Rule 15 permitted the liquidator to substitute as plaintiff. The court further ruled that, because all of Allied's rights *and obligations* had vested in the liquidator as a matter of law, the liquidator's promise that Allied would reimburse complied with the certification requirements. The liquidator then substituted as plaintiff and moved for summary judgment.

In *Eakin*, the court granted the motion. In so doing, the court rejected for a second time Continental's re-argument that the liquidator had to personally guarantee that Allied would return any funds not needed to satisfy its liability under the Surety Bond. The court also held that, although the complaint requested "damages" for Continental's refusal to accept the certification documents and to turn over the $805,000, the proper relief was specific performance. The reason for this, the court explained, was the Letter of Credit's "collateral security provision:"

> The "collateral security provision" gives the liquidator the right to obtain Continental's money before Allied has suffered any losses under the surety bond. *See Safeco Insurance Co. of America v. Schwab*, 739 F.2d 431 (9th Cir.1984); *Milwaukee Construction Co. v. Glenns Falls Insurance Co.*, 367 F.2d 964 (9th Cir.1966). To date, there simply are no damages for this court to award.

*Eakin* 687 F.Supp. at 1262. Thus, the court ruled that it would grant the liquidator specific performance; that is, the court instructed the liquidator to prepare an order for this court's signature which would require Continental to turn over the $805,000 in return for the liquidator's certification documents.

The liquidator did so, and Continental objected, insisting that specific performance is inappropriate in this case. Because Allied had not requested specific performance, the court allowed Continental time to brief its objections ("the Objections"). Continental has now done so, arguing that specific performance is inappropriate for two reasons: first, because the liquidator did not request such relief; and second, because the availability of an adequate remedy at law prevents this court from ordering specific performance.[1]

## DISCUSSION

### Failure to Request

▉ Rule 54 of the Federal Rules of Civil Procedure provides, in pertinent part:

> (c) *Demand for Judgment.* A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in the party's pleading.* (Emphasis added.)

The rule thus "makes clear that a judgment should give the relief to which a party is entitled, *regardless of whether it is legal or equitable* or both." Advisory Committee Notes to Rule 54(c). (Emphasis added.) Accordingly, Continental's argument that the liquidator's failure to request specific performance precludes the court from granting it is frivolous.

### Adequacy of Legal Remedy

▉ Continental's second argument, that the court must award damages rather than specific performance because damages provide an adequate remedy at law, is only

---

1. In a footnote, Continental also objected to the proposed order granting specific performance on the grounds that it required payment to Allied's account, rather than to the liquidator's. This objection merely rehashes the argument, already rejected twice by this court, that the liquidator is somehow distinguishable from Allied. That Continental chose to relegate it to a footnote this time does not diminish the impropriety of Continental's refusal to accept and acknowledge the rulings of this court.

slightly more complicated and equally meritless. As explained above, this court ruled that specific performance was required here because Allied had not yet made payment on the Surety Bond and thus "to date, there simply are no damages to award." In so doing, the court cited two other cases involving "collateral security provisions" similar to the one at issue here. *See Safeco Insurance Co. of America v. Schwab,* 739 F.2d 431 (9th Cir.1984); *Milwaukee Construction Co. v. Glenns Falls Insurance Co.,* 367 F.2d 964 (9th Cir.1966). The cases explained that, without specific performance, the obligee would lose the benefit of the provision—that is, the right to obtain the funds *before* satisfying the underlying liability. *Safeco Insurance Co. of America v. Schwab,* 739 F.2d at 433.

In the Objections, Continental neither mentioned these cases nor specified any damages Allied has incurred. It merely stated that "plaintiff's legal remedy is adequate as a matter of law and ... plaintiff is entitled to no more than an award of damages ... in the amount of $800,000." This is plainly wrong. Since Allied has made no payments under the Surety Bonds, it has as yet suffered *no* damages. Specific performance is thus not merely the liquidator's only *adequate* remedy; for now, it is his *only* remedy. Again, Continental's objection to equitable relief is frivolous.

### RULE 11

*Rule 11 Sanctions*

 Rule 11 establishes two grounds for sanctioning lawyers who abuse their special role in our legal system. *Brown v. Federation of State Medical Boards of U.S.,* 830 F.2d 1429, 1435 (7th Cir.1987). The first ground, the "frivolousness clause," prohibits attorneys from filing pleadings, motions or other papers without " 'reasonable inquiry' into both facts and law." *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1080 (7th Cir. 1987). The second, the "improper purpose clause," provides that such papers "must not be interposed for purposes of delay, harassment, or increasing the cost of litigation." *Brown v. Federation of State*

*Medical Boards of U.S.,* 830 F.2d at 1436. Continental has run afoul of both clauses.

#### 1. *The Frivolousness Clause*

 As discussed above, Continental's two objections to the order granting specific performance have no basis whatever in fact or law: The first flies in the face of the specific language of Rule 54(c); the second ignores entirely the facts of this case. Both lack any citation to (relevant) law. They have served only to waste the liquidator's money—and this court's time. They cry out for sanctions, and the court will oblige. This ruling, however, is the least of Continental's Rule 11 problems.

#### 2. *The Improper Purpose Clause*

It is not just the frivolousness of the Objections which troubles this court. Even more disturbing is Continental's apparent motives for raising them. Were the court to award damages, Continental would not only be out $805,000 but would also be without the certification documents. In other words, once the liquidator enforced the judgment, Allied would have the $805,000 free and clear of any obligation to return unused funds to Continental. What possible reason could Continental have for seeking this result?

The liquidator suggests one: Perhaps Continental wants a money judgment rather than specific performance so that it can continue to delay this litigation at the enforcement stage.

Ordinarily, this court disapproves one party speculatively accusing another of such blatant misconduct, particularly when the fault for the wrongdoing, if it occurred, lies with the wrongdoer's attorneys. As this court has said before, when legal rhetoric crosses the line into accusations of professional misconduct, the court's tolerance runs thin. *See, e.g., Draper & Kramer, Inc. v. Baskin–Robbins, Inc.,* 690 F.Supp. 728 (1988). In this case, unfortunately, the accusations ring true.

Throughout the course of this lawsuit, this court has grown increasingly suspicious of Continental's motives. To be sure,

this case involves some difficult issues regarding the interaction of state liquidation proceedings and the law of Letters of Credit. But *Allied* addressed those issues, and resolved them. Continental may not have liked that ruling, but—once the time for reconsideration had past, and until the time for appeal arrives—it had to accept it.

Continental did not. Instead, in subsequent pleadings and briefs it re-argued and obfuscated the issues, in ways that suggested it understood well the inevitability of judgment against it and sought only to delay that outcome as long as possible. Nevertheless, the court allowed its suspicions to lie dormant, both because the liquidator had not requested sanctions and because Continental's arguments, though hypertechnical and redundant, were not entirely without merit; this court does not lightly infer wrongdoing by members of the bar.

The filing of the Objections, however, has forced this court to act. Not only are they frivolous, but they seek a result *detrimental* to Continental—detrimental that is, except insofar as Continental improperly seeks to delay these proceedings. When added to Continental's borderline conduct throughout, the Objections demonstrate that Continental has indeed been conducting this litigation for an improper purpose.

*Amount of Sanctions*

Although the filing of the Objections motivates this court's ruling under both Rule 11 clauses, the "improper purpose clause" violation requires the stiffer sanctions. Under the "frivolousness clause," this court would award sanctions only for Continental's filing of the Objections, since this was the only filing found to be frivolous. Under the "improper purposes clause," by contrast, this court will consider sanctions for Continental's conduct from the time the improper purpose took over—that is, January 25, 1988, the day *Allied* issued.

The court will award the liquidator his costs and reasonable attorneys fees since that date. The court also intends to penalize Continental and its attorneys heavily for their conduct in this lawsuit, for although compensation is an important consideration underlying Rule 11, "[a]n even more important purpose is deterrence." *Brown v. Federation of State Medical Boards of U.S.*, 830 F.2d at 1438. Continental has wasted the time and money of its adversary and this court. It must pay.

To assist this court in imposing an appropriate sanction, the liquidator should file a petition setting forth both his costs and fees as delineated above and its suggestion of an appropriate penalty based on the factors outlined in *Brown* and on actual awards imposed in similar Rule 11 cases.

In its response, Continental may—if it wishes—explain to the court its true motive for objecting to specific performance. Although this will not affect Continental's liability, since under both Rule 11 clauses an objective test applies, its subjective intent may well impact on the amount of the award. Continental should not, however, re-argue the merits of the Objections, and if its only excuse for filing them is that it believed they were valid, then the court suggests that Continental provide no explanation at all.

## CONCLUSION

The decision to grant the liquidator specific performance stands. The liquidator's claim for damages is dismissed. Continental's counterclaim is dismissed without prejudice. Continental shall tender by wire transfer $805,000 on or before the close of business on September 1, 1988, to the segregated account administered by the liquidator for Allied entitled Allied Fidelity Insurance Co. Collateral Savings 2, Account No. 993–12258, Indiana National Bank, Indianapolis, Indiana, ABA No. 074–0000–52. The court imposes Rule 11 sanctions against Continental sua sponte and will conduct supplemental proceedings to determine the amount of the award. The parties shall file additional briefs as set forth in the Memorandum Opinion.