875 F.2d 114
 8 UCC Rep.Serv.2d 422
 Harry E. EAKIN, Indiana Insurance Commissioner, Liquidator
of Allied Fidelity Insurance Company, Plaintiff-Appellee,
v.
CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY of
CHICAGO, Defendant-Appellant.
 No. 88-2728.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 11, 1989.
Decided May 11, 1989.
Rehearing Denied June 20, 1989.
 
 David M. Meister, Katten Muchin Zavis Pearl & Galler, Chicago, Ill., for defendant-appellant.
 Monica L. Thompson, Keck Mahin & Cate, Chicago, Ill., for plaintiff-appellee.
 Before BAUER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 Letters of credit assure swift and reliable payment in commercial transactions. That promise was frustrated by Continental Illinois National Bank, which used flimsy pretexts to renege on a standby letter of credit supporting a construction contractor's bond.
 
 
 2
 Continental issued an irrevocable letter of credit in December 1984 at the request of Bill's Coal Co., so that Allied Fidelity Insurance Co. would issue a surety bond promising to stand behind Bill's performance of a reclamation project in Kansas. Continental promised to pay Allied $805,000 on presentation of a sight draft and documents showing that Bill's had defaulted, causing Allied to incur liability. The letter required Allied to segregate the $805,000 and promise to return any portion not used to satisfy Bill's debts. Bill's became insolvent, and claims approximating $1.5 million were filed with Allied, which early in July 1986 drew on the letter of credit. Continental put off paying, on the stated ground that the papers contained typographical errors.
 
 
 3
 Allied is an Indiana insurance company, and under Indiana law the Insurance Commissioner takes over a failed insurer as "liquidator". Ind.Code Sec. 27-9-3-7. The Circuit Court of Marion County appointed the Commissioner as Allied's liquidator on July 15, 1986. Ind.Code Sec. 27-9-3-7(b) provides that the "liquidator shall be vested by operation of law with the title to all of the property, contracts, and rights of action" of the insurer. On assuming control of Allied, Harry E. Eakin, the Commissioner, demanded that Continental fork over the $805,000. Continental has refused to honor that draw or any other.
 
 
 4
 Continental, which issued the letter to assure payment to Bill's creditors, seized on the adventitious fact that Allied too had failed. An attorney for Continental sent Eakin a letter saying that the creditors of Bill's Coal should be treated as unsecured creditors of Allied, and that their claims should be written down accordingly; Continental proposed to fund only the entitlements that remained after that process. The letter implied that if Eakin was unwilling to defer receiving payment until after Allied's affairs were wrapped up then Continental was not going to pay anything. Continental relied exclusively on Fidelity & Deposit Co. v. Pink, 302 U.S. 224, 58 S.Ct. 162, 82 L.Ed. 213 (1937), which is spectacularly irrelevant. Decided under federal common law during the reign of Swift v. Tyson, 41 U.S. 1, 10 L.Ed. 865 (1842), Fidelity & Deposit held that the reinsurer of a bankrupt insurance company was liable only for the portion of the debt that the original insurer must pay after apportionment in bankruptcy, given the language of the contract between them. Indiana has a statute disapproving the result of this case, Ind.Code Sec. 27-9-3-30, and even before Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), state statutes (as opposed to common law) had been applied to diversity cases under the Rules of Decision Act, 28 U.S.C. Sec. 1652. The letter of credit Continental issued does not contain anything like the language of the contract at issue in Fidelity & Deposit and is not "reinsurance" anyway. Letters of credit are governed by Article 5 of the Uniform Commercial Code. Continental pledged to pay $805,000 on presentation of conforming papers. Letters of credit are designed to avoid complex disputes about how much the beneficiaries "really" owe. The promise and premise are "pay now, argue later". Continental had no colorable ground for saying that Fidelity & Deposit allowed it to sit out Allied's liquidation and decide at the end how much it was willing to pay. It had to pay $805,000 immediately on tender of conforming papers. Under the Illinois version of the UCC, which governs Continental's letter of credit, the issuer must pay without regard to rights and defenses available on the underlying contract. E.g., Pastor v. National Republic Bank of Chicago, 76 Ill.2d 139, 28 Ill.Dec. 535, 390 N.E.2d 894 (1979). See also James J. White & Robert S. Summers, Uniform Commercial Code Secs. 19-2, 19-5 (3d ed.1988).
 
 
 5
 Continental has dropped the insistence that it is entitled to pay less than $805,000 because Allied is kaput. Nonetheless, it still refuses to pay. It is almost three years since Allied demanded payment; Continental has yet to surrender a nickel. It has instead litigated with so much fervor, and so little support, that the district court awarded Eakin sanctions under Fed.R.Civ.P. 11. Proceedings to fix the amount are under way in the district court. We have for decision in this diversity action Continental's latest defense to payment, no more persuasive to us than to the district judge, who found it silly. 121 F.R.D. 363 (N.D.Ill.1988).
 
 
 6
 Here is Continental's current ground for balking: Eakin signed the papers "Allied Fidelity Insurance Company By: [signature] Harry E. Eakin, Indiana Insurance Commissioner, as Liquidator of Allied Fidelity Insurance Company." Continental protests that "Allied Fidelity Insurance Co." no longer exists. It wants Eakin to "provide appropriate clarification that the certifications made in the draw, including the certification to return funds, is [sic] being made by the Liquidator in its [sic] individual capacity." Why Eakin should be personally responsible for Allied's debts--which individual-capacity certification would make him-Continental has never explained. Allied's managers would not have been personally liable before its insolvency. Issuers of letters of credit take the risk of insolvency. Standby letters of credit are especially designed to deal with insolvency, and the fact that this risk came to pass with both Bill's and Allied does not afford Continental a good reason for balking. It is entitled to no more than it would have had if Allied were still afloat, and it would not have had the personal guaranty of Allied's managers.
 
 
 7
 Still, Continental is entitled to Allied's assurance (as much as it would have had outside of bankruptcy) that Allied will segregate the money and repay anything left over. Eakin insists that he gave Continental this assurance; Continental denies receiving it. Whether the draws contained the contractually-required assurance is a question of Indiana law. Section 27-9-3-7(b) provides that the "liquidator shall be vested by operation of law with the title to all of the property, contracts, and rights of action" of the insurer. In contemplation of the laws of Indiana, Allied and its Liquidator are one, as the district court held, 687 F.Supp. 1259 (N.D.Ill.1988). Cf. Kelley v. First Westroads Bank, 840 F.2d 554 (8th Cir.1988) (same conclusion for a liquidator of a bank under federal law). "Allied by Eakin, Liquidator" and "Eakin as Liquidator of Allied" are identical under Indiana law.
 
 
 8
 If there were any doubt of this given the statute, there can be none in light of Eakin's representation, accepted by the district court, that under Ind.Code Sec. 27-9-3-40(1)(A) his promise as Liquidator to segregate the funds and return any unused monies has even greater force than the representation by Allied would have had before its failure. Eakin is a public official as well as a litigant. Although the status of legal interpretations proffered by executive officials of state governments is open to debate, cf. Huggins v. Isenbarger, 798 F.2d 203, 207-10 (7th Cir.1986) (concurring opinion), there can be no doubt that the legal analysis of a state official receives at least the deference due the legal analysis of the executive branch of the federal government--which is to say, considerable. E.g., Frisby v. Schultz, --- U.S. ----, 108 S.Ct. 2495, 2501, 101 L.Ed.2d 420 (1988) (accepting the construction of state law by the state's lawyer over the reading given it by this court). Eakin's representation to the district court that his signature in the form "Allied by Eakin, Liquidator" means that Continental will get back any funds unused to pay Bill's debts under the bond is not only a believable interpretation of Indiana's law but also enforceable, by contempt if necessary, as an "undertaking", 687 F.Supp. at 1261, made to and relied on by the district court. What more could Continental (legitimately) want?
 
 
 9
 It turns out that Continental wants one more thing, even having lost on the merits. The district court concluded that Eakin's damages from non-payment are indefinite, because there might be money left over; the court's opinion therefore ordered specific performance of the letter of credit, with Eakin to tender another set of documents (including the commitment to give back unused funds) and Continental to turn over the money. The court directed Eakin to "prepare an order for this court's signature which will require Continental to perform its obligations under the Letter of Credit in return for the liquidator's conforming certifications." 687 F.Supp. at 1262; see also 121 F.R.D. at 365. Relying on Sec. 5-115 of the UCC, Ill.Rev.Stat. ch. 26 Sec. 5-115, Continental maintains that specific performance is unavailable because damages, an adequate remedy at law, can be had. Its brief states: "Assuming conforming certifications were tendered, Continental's failure to pay the face amount of the letter of credit caused 'damage' of $805,000.00." Eakin sensibly replies that such an award would make Continental worse off, because it would scotch any chance of getting something back if the claims attributable to Bill's Coal could be disposed of for less than $805,000. Continental's willingness to shoot itself in the foot, to jettison (in exchange for delay in payment and perhaps another round of litigation in the district court) the benefits of the cash-return provision that supply the stated reason for dishonoring the draws on the letter of credit, Eakin believes, simply demonstrates Continental's bad faith--a position in which the district judge concurred, 121 F.R.D. at 366-67.
 
 
 10
 We need not decide whether the UCC requires Continental to pay $805,000 or some other sum as damages, or whether instead specific performance is the right remedy. Although the district court's opinion concludes that specific performance is appropriate, the judgment awards $805,000 in cash. The district court ignored the draft injunction that Eakin submitted. It instead entered a Rule 58 judgment reading, in full: "IT IS ORDERED AND ADJUDGED that summary judgment in the amount of $805,000 is entered in favor of the plaintiff and against the defendant. Enter judgment." Judicial opinions do not create obligations; judgments do. Azeez v. Fairman, 795 F.2d 1296, 1297 (7th Cir.1986). In the event of a conflict between the opinion and the judgment, the judgment controls. Bethune Plaza, Inc. v. Lumpkin, 863 F.2d 525, 527-28 (7th Cir.1988).
 
 
 11
 Continental may have brought this conflict on itself, for it objected strenuously to the draft injunction tendered by Eakin. In open court, counsel for Continental explained that it opposed injunctive relief because it would have to pay at once, while it could defer satisfying a money judgment. So it has, for Continental, invoking 12 U.S.C. Sec. 91, has neither paid the judgment nor posted a supersedeas bond. At all events, if the money judgment was an error rather than a response to Continental's patter of protests, counsel should have brought the conflict to Judge Duff's attention by motion under Fed.R.Civ.P. 59 or 60(a), see United States v. Griffin, 782 F.2d 1393 (7th Cir.1986). Continental instead filed this appeal and insisted in its brief and at oral argument that money damages is the only permissible remedy.
 
 
 12
 Continental demands a monetary rather than injunctive award. No sooner said than done. It may rue the request, because it has now lost the right to repayment of any money unused in covering the bond issued to Bill's Coal. But then it is not only the stuff of fairy tales for the Genie's literal interpretation of our wishes to leave us sorrowful. Having got what we asked for, we learn that it is not at all what we wanted.
 
 
 13
 AFFIRMED.