552 So.2d 225 (1989)
TRANSAMERICA PREMIUM INSURANCE COMPANY, Etc., Appellant,
v.
CAVALRY CONSTRUCTION, INC. Etc., et al., Appellees.
No. 89-1249.
District Court of Appeal of Florida, Fifth District.
October 5, 1989.
Rehearings Denied November 13, 1989.
Robert E. Morris, and Deborah K. Shelton, of Morris & Rosen, P.A., Tampa, for appellant.
Alice Blackwell White, P.A., and Brenda Lee London, of Broad and Cassel, Maitland, and William A. Harmening, Longwood, for appellees.
SHARP, Judge.
Transamerica Premium Insurance Company appeals from an order denying in part its emergency motion for a temporary injunction and quia timet relief. The trial court denied Transamerica's request for the appointment of a receiver as to Cavalry Construction's assets, as well as the assets of Edgar and Thuong Foshee to satisfy the performance bond. The Foshees are individual guarantors and indemnitors of Transamerica's $1,187,000 payment and performance bonds which it issued for the benefit of Timberleaf Associates, the owner of a project for whom Cavalry partially performed a construction contract. However, the court did require that the first $250,000 realized by Cavalry on its business liquidation sale, set for June 15, 1989, be restricted to pay all of Cavalry's outstanding *226 debts to suppliers, contractors, subcontractors and materialmen covered by Transamerica's payment bond. We affirm.
The record before us reveals that Cavalry is, or was once, in the construction business. It entered into a contract with Timberleaf Associates to do site work, and install water, sewer, and underground piping for $1,187,000. Transamerica issued the bonds in that amount, guaranteeing Cavalry's payment and performance to Timberleaf.
In order to induce Transamerica to write this bond, Cavalry and the Foshees executed a general indemnity agreement in Transamerica's favor, to hold it harmless from any losses or payments under the bond. In addition, paragraph five of the indemnity agreement provided.
5. COLLATERAL SECURITY
If a claim is made against Surety, whether disputed or not, or if Surety deems it necessary to establish a reserve for potential claims, and upon demand from Surety, the Undersigned shall deposit with Surety cash or other property acceptable to Surety, as collateral security, in sufficient amount to protect the Surety with respect to such claim or potential claims and any expense or attorneys' fees. Such collateral may be held or utilized by Surety until it has received evidence of its complete discharge from such claim or potential claims, and until it has been fully reimbursed for all loss, expense and attorneys' fees.
A dispute arose between Cavalry and Timberleaf as to Cavalry's performance under the construction contract. Cavalry recorded a claim of lien against Timberleaf for $357,534 and claims additional sums are due for change orders and extras. Timberleaf claimed Cavalry was in default and it was forcefully removed from the project. Various suppliers and subs notified Transamerica that Cavalry had failed to pay them.
When Cavalry's troubles with Timberleaf came to the attention of Transamerica in March of 1989, it asked Cavalry to handle the dispute, and to keep it closely informed. It requested detailed information concerning sums owed by Cavalry on the project, and its defenses to Timberleaf's claims. At the hearing it was shown that Cavalry had responded to most of Transamerica's requests for information.
By letter dated May 23, Transamerica demanded that Cavalry or the Foshees furnish it with collateral equal in value to the total amount of its potential obligations under the bonds: $1,187,000. At the hearing, the bond claim specialist for Transamerica testified that the company had reasonable grounds to fear that it might be liable for the full amount of both bonds. When asked to justify why Transamerica feared such a loss, the specialist noted that Cavalry was going out of business, and planned to auction all of its equipment and rolling stock within two days of the hearing. Cavalry admitted it owed some $250,000 of disputed and undisputed sums to suppliers and subs on the project.
However, Transamerica was unable to provide any basis for its further assertion that it faced exposure under the performance bond. Transamerica claimed Timberleaf filed a lawsuit against Cavalry and itself in which Timberleaf sought damages of $5,000,000 under the construction contract, and in a letter, asserted its damages were $8,000,000. But the letter from Timberleaf offered in evidence by Transamerica completely failed to substantiate damages of such magnitude. The major default claimed against Cavalry was delay, incorrect installation of part of a sanitary sewer system, and a dispute over extras. No monetary sums were proved for any of these grounds; and Cavalry offered affidavits disputing any liability to Timberleaf and asserting it owed Cavalry substantial sums on the contract.
Transamerica asserts that under these circumstances it was entitled to enforcement of its collateral security clause. While we agree that such clauses are enforceable in equity,[1] the party seeking quia *227 timet relief must clearly establish a basis for it. As the trial court noted at the hearing, the issue was not whether Transamerica actually feared a $1,187,000 loss, but whether there was any rational basis for such a fear.
We agree that Transamerica failed to flesh out the nature and approximate amount of the claims and liabilities it might reasonably anticipate under the bond from Timberleaf's claims. The claims of the unpaid subs, laborers and materialmen owed by Cavalry under the project were sufficiently established to permit the trial court to (in effect) grant quia timet relief, which was granted. However, without proof that the surety realistically faces loss under the performance bond and is in jeopardy, the trial court correctly determined that additional quia timet relief was not appropriate. Cf. St. Martin v. McGee, 82 So.2d 736 (Fla. 1955); Schechtman v. Grobbel, 226 So.2d 1 (Fla.2d DCA 1969).
AFFIRMED.
DANIEL, C.J., and COWART, J., concur.
NOTES
[1] See Safeco Ins. Co. of America v. Schwab, 739 F.2d 431 (9th Cir.1984); Milwaukie Construction Co. v. Glens Falls Ins. Co., 367 F.2d 964 (9th Cir.1966).