Troy, Paul E., J.
INTRODUCTION
This action arises from surety contracts (“the surety-agreements”) between International Fidelity Insurance Co. (“IFI”) and Steven, Richard, and Janine Vazza (collectively “the Vazza defendants”), under which IFI posted a security bonds on behalf of the Vazza defendants. Based on language in the surety agreements, IFI later made demand on the Vazza defendants to post collateral security to protect IFI in connection with claims made against its surety bonds. The Vazza defendants refused to do so, and this action followed. Before the court is IFI’s Motion for Prejudgment Attachments, Trustee Process, and Preliminary Injunction. For the reasons that follow, that motion will be denied.
BACKGROUND
The following facts are taken from the uncontested representations of the parties in their written submissions and at oral argument. On July 10, 2007, Richard R. Vazza (“the decedent"), father of the Vazza defendants, died unexpectedly. The decedent, a real estate developer in Florida, had personally guaranteed a number of financing agreements pertaining to various real estate projects before his death. As a result, there were a large number of creditors for the decedent’s estate. The decedent’s estate was, and still is, subject to probate in the Florida Probate Court.
Initially, Steven Vazza was named temporary curator of the decedent’s estate, requiring him to post a $1,000,000 curator bond (“the curator bond”). Subsequently, Steven and the other Vazza defendants were named as personal representatives of the estate, requiring them to post a $2,000,000 personal representative bond (“the personal representative bond”). According to the Vazza defendants, the personal representative bond replaced and superseded Steven’s curator bond.
IFI served as surety on both the curator bond and the personal representative bonds. The surety agreements corresponding to all such bonds included language reflecting the Vazza defendants’ assent to “deposit with [IFI] on demand an amount sufficient to discharge any claim made against [IFI] on this bond or undertaking. This sum may be used by [IFI] to pay such claim or be held by [IFI] as collateral security against loss or cost on this bond or undertaking.”
During the probate process, the Vazza defendants claim to have “worked closely and cooperatively with the creditors of the estate (the banks) to work out a plan for the orderly completion of the [decedent’s real estate] projects, which [they] proceeded to cany out with the full knowledge and cooperation of the banks.” (Emphasis added.) According to the Vazza defendants, they used estate funds to finance the continuing operations of companies and ventures that had been financed by the decedent, with the creditors’ full knowledge and assent. The Vazza defendants further assert that they “obtained no improper personal profit from the estate, and all of [their] actions were taken with the advice of experienced probate counsel.”
On or about August 17, 2009, National City Bank (“National City") notified IFI via letter that it planned to make a claim against the personal representative bond, based on acts taken by the Vazza defendants which “intentionally and willfully dissipated assets of the Estate ... by means of self-dealing, payment of salaries, benefits and other compensation in direct violation of Court order and Florida law as well as negligent and intentional wasting and/or dissipation of assets of the estate.” No further particulars concerning National City’s claims appear in the record before this court.
On or about October 7, 2009, Century Bank & Trust Co. (“Century”) filed a complaint in Florida Probate Court against the Vazza defendants, seeking to remove them as personal representatives of the decedent’s estate and to impose a surcharge against them based on their misappropriation of estate assets. Century alleges in its complaint that “in excess of six million dollars of cash from the Estate . . . was directed to Vazza Properties for the specific purpose of continuing to fund businesses including limited liabiliiy companies, limited partnerships and other operations . . .”[2]
On May 28, 2010, IFI demanded that the Vazza defendants post collateral security in accordance with the terms of the surety agreements, to protect IFI against loss stemming from the claims brought by National City and Century. The Vazza defendants refused to do so. This action followed.
Notably, IFI expressly stated in its Complaint that it is “currently investigating the claims asserted by Century and National City. As its investigation is not yet complete, [IFI] takes no position on the truth of the creditors’ allegations." IFI has not submitted any argument to the court, beyond National City’s letter and Century’s complaint, that shows any of the creditors are reasonably likely to prevail in their litigation against the Vazza defendants. The Vazza defendants, for their part, have submitted unequivocal statements in sworn affidavits that National City and Century’s claims against them are without foundation, and that all of the Vazza defendant’s actions vis a vis the decedent’s estate were properly taken on the advice of probate counsel, with the knowledge and approval of estate creditors.
DISCUSSION
1. Standard
In deciding a motion for preliminary injunction, the court determines whether the party seeking the in *447 junction had demonstrated a likelihood of success on the merits of the action at a subsequent trial, whether the plaintiff has shown they will suffer irreparable harm if the injunction is not given, and whether the overall balance of the equities militates in favor of issuing the injunction. See Packaging Indus. Corp. v. Cheney, 380 Mass. 609, 622 (1980).
2. Likelihood of success on the merits
Before addressing the substance of IFI’s claims, the court must first resolve the question of what state law governs the surety agreements. Massachusetts applies a “functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole.” Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 631 (1985). “Under this approach, in the absence of a contractually binding choice of law clause or agreement, a court looks to the law of the state with the most significant relationship to the transaction and the parties.” Spencer v. Kantrovitz, 392 F.Sup.2d 29, 35 (D.Mass. 2005) (footnote omitted). See also Restatement (Second) of Conflict of Laws, §6 (1971).
Here, the surety agreements were entered into in connection with a probate proceeding in a Florida court. While the parties have not specified where those agreements were executed, their purpose was to allow the Vazza defendants to proceed as personal representatives after satisfying their obligations under Florida law to post a personal representative bond. In addition, the claims brought against the Vazza defendants, potentially creating liability for IFI under the personal representative bond, are likewise pending in a Florida court.
In addition, the factors emphasized in Bushkin further militate in favor of applying Florida law. See Bushkin at 632, citing Restatement (Second) of Conflict of Laws, §6(2) (“(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied”).
Florida has a clear interest in applying its own policies to the surety agreements, which arose from the Vazza defendants involving themselves in a Florida probate proceeding. As will be explained further below, Florida law requires a showing of a reasonable likelihood of loss before collateral security can be demanded under a surety agreement like the one between IFI and the defendants. Based on the close relationship between the surety agreements and Florida, the parties’justified expectations must have been that Florida law would govern the surety agreements. Indeed, the only relationship Massachusetts has to the surety agreements is that the Vazza defendants claim residence, and own some property, here. To allow Massachusetts law to govern the surety agreements would create uncertainty with respect to future situations in which a choice of law must be made. Therefore, Florida law controls the surety agreements.[3]
Having decided that Florida law applies, this court is obliged to follow the rule enunciated in Trans-america Premium Ins. Co. v. Cavalry Constr., Inc., 552 So.2d 225 (Fla.Ct.App.5thDist. 1989), review den’d, 563 So.2d 635 (Fla. 1990). There, Transamerica posted a surety bond on behalf of Cavaliy Construction, and later sought a similar order requiring Cavaliy Construction to post collateral security in connection with that agreement. The surety agreement provided, in pertinent part, “If a claim is made against Surety, whether disputed or not, or if Surety deems it neces-saiy to establish a reserve for potential claims, and upon demand from Surety, the Undersigned shall deposit with Surety cash or other property acceptable to Surety, as collateral security, in sufficient amount to protect the Surety with respect to such claim or potential claims and any expense or attorneys fees.” Id. at 226.
When a claim was asserted against Cavaliy Construction, Transamerica demanded that it deposit collateral security in accordance with the surety agreement. At the time of Transamerica’s demand, there was nothing to substantiate the claims made against Cavalry Construction beyond a letter from the plaintiff asserting claims against Cavalry Construction. Id. For its part, Cavaliy Construction “offered affidavits disputing any liability.” Id.
The Transamerica court held that “without proof that the surely realistically faces loss under the performance bond and is in jeopardy,” an order to post a performance bond is not required, irrespective of language in the surety agreement that such collateral security must be deposited “on demand.” Id. at 227.
Similarly, the surety agreement between IFI and the Vazza defendants provides, on its face, that the Vazza defendants must post collateral security “on demand.” In addition, IFI, like Transamerica, offers virtually no argument to demonstrate a reasonable likelihood of loss under the personal representative bond beyond the existence of the claims against the bond. IFI has not even attempted to persuade the court that those claims are reasonably likely to produce liability. In fact, IFI takes precisely the opposite stance in its motion papers, stating that it “takes no position” with respect to the merits of the actions brought by Century and National City. The Vazza defendants, like Cavaliy Construction, have stated in affidavits that the claims against them are without foundation. There being no reasonable likelihood shown that IFI faces loss under the personal representative bond, Florida law does not permit an order requiring the Vazza defendants to post collateral security.
*448 In contrast, Liberty Mut. Ins. Co. v. Aventura Eng’g & Constr. Corp., 534 F.Sup.2d 1290 (S.D.Fla. 2008), required Aventura to post collateral security where the terms of the surety agreement between it and Liberty Mutual provided that “(i]f [Liberty Mutual] determines, in its sole judgment, that potential liability exists for losses and/or fees, costs and expenses for which [Aventura] will be obliged . . . [Aventura] shall deposit with [Liberty Mutual] promptly on demand, a sum of money equal to an amount determined by [Liberty Mutual] ... to cover that liability.” (Emphases added.) Taking note of the markedly stronger language in the surety agreement in Liberty Mutual versus that in Transamerica, the Liberty Mutual court held that “the [surety] agreement simply does not provide that Liberty [Mutual] must receive a valid claim” to demand collateral security; a showing that “[the] claim on the bond was ‘valid’ is not a precondition to Liberty [Mu-tuales exercise of its right to be exonerated.” Id. at 1311. Thus, Aventura was required to post collateral security.
However, the language of the surely agreement here differs from that in Liberty Mutual The language does not reserve the right to demand collateral security to IFI’s “sole judgment,” nor is the obligation to post such security triggered by “potential liability.” Instead, the language of the surety agreement here more closely resembles the surety agreement in Transamerica, where the surety must demonstrate a reasonable likelihood of loss before collateral security may be required.[4]
Accordingly, IFI has not demonstrated a likelihood of success on the merits and there are no grounds for the issuance of a preliminaiy injunction.[5]
CONCLUSION AND ORDER
For the foregoing reasons, the Motion for Prejudgment Attachments, Trustee Process, and Preliminary Injunction is, in all respects, DENIED.

 Century’s complaint includes further, subsidiary allegations that the Vazza defendants improperly expended estate funds to 1) pay $78,000 in funeral expenses, beyond the $6,000 amount allowed by F.S. §733.707; 2) pay “substantial attorneys fees” without court authorization; 3) make car lease payments; 4) make payments on the decedent’s condominium; and 5) make golf club membership payments.
The Vazza defendants do not specifically controvert these allegations, beyond their blanket position that all estate funds were used to stave off defaults under the decedent’s various financing agreements, with the creditors’ permission. However, Century’s complaint does not attach any specific dollar amount to any of these other alleged improprieties, beyond the $78,000 spent on funeral expenses. For reasons that will be more fully explained in the Discussion section, infra, these subsidiary allegations of misfeasance, causing largely vague and unspecified damages, cannot provide a basis for an attachment in the specific amount of $3,600,000 against any of the Vazza defendants.

 Nevertheless, Massachusetts law will control the attachments sought by IFI. See generally Mass.R.Civ.P. 4.1.

 The court notes that, to the extent IFI relies on U.S. Fid. & Guar. Co. v. Arch Ins. Co., Civil Action No. 06-11088, 2008 WL 190758 (D.Mass. Jan. 15, 2008), the U.S. Court of Appeals for the First Circuit has looked upon the reasoning in that decision with disfavor. See U.S. Fid. & Guar. Co. v. Arch Ins. Co., 578 F.3d 45, 60 (1st Cir. 2009). The decision was not reversed because the First Circuit declined to review it on the merits under the collateral order doctrine. Id. For those reasons, this court would not be inclined to follow the U.S. Fid. & Guar. Co. decision.

 Because the Motion for Prejudgment Attachment is resolved on other grounds, the court need not address the additional contentions submitted by the Vazza defendants that Mass.R.Civ.P. 4.1 does not permit the prejudgment attachments that IFI seeks, and that if the attachments were allowed, Mass.R.Civ.P. 65(c) would necessitate that IFI post a very substantial bond because of the potential financial impact on the Vazza defendants and their institutions.